IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

MAR 25 2008

COURT OF APPEALS
DIVISION TWO



MANUEL M.,                                    )
                                              )
                          Appellant,          )        2 CA-JV 2007-0071
                                              )        DEPARTMENT B
            v.                                )
                                              )        O P I N I O N
ARIZONA DEPARTMENT OF                         )
ECONOMIC SECURITY, LEILA M.,                  )
and ALAYANA M.,                               )
                                              )
                          Appellees.          )
                                              )
_____ )


APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. 17003500

Honorable Charles S. Sabalos, Judge

AFFIRMED

_____

Joan Spurney Caplan                                            Tucson
                                                  Attorney for Appellant


Terry Goddard, Arizona Attorney General
  By Dawn R. Williams                                          Tucson
                                           Attorneys for Appellee Arizona
                                           Department of Economic Security

_____


E C K E R S T R O M, Presiding Judge.

¶1 Appellant Manuel M. appeals from the juvenile court's order of August 13, 2007, terminating his parental rights to his five-year-old daughter, Leila, and his four-year-old daughter, Alayana. Manuel challenges the constitutionality of Rule 66(D)(2), Ariz. R. P. Juv. Ct., which provides the consequences for a parent's failure to appear for scheduled termination proceedings. He also contends the court erred by denying him an opportunity to examine a case manager for Child Protective Services (CPS) and by considering inadmissible evidence to conclude the Arizona Department of Economic Security (ADES) had proven grounds for termination. After considering the record, applicable rules, and arguments of the parties, we conclude that the court erred by denying Manuel the opportunity to cross-examine the case manager concerning the sufficiency of the evidence to support the grounds alleged for termination and abused its discretion in admitting evidence without proper foundation. But we find these errors were harmless in the context of this case. We therefore affirm the court's termination order.[1]

¶2 Viewed in the light most favorable to affirming the juvenile court's findings, *see In re Maricopa County Juv. Action No. JS-8490*, 179 Ariz. 102, 106, 876 P.2d 1137, 1141 (1994), the evidence establishes the following. After investigating allegations that the children's mother, Melissa A., had engaged in domestic violence and substance abuse and

---

[1]Manuel raises other issues that do not meet the criteria for publication. *See* Ariz. R. Sup. Ct. 111(b); Ariz. R. Civ. App. P. 28(b). We address them in a separate, contemporaneously filed memorandum decision. *See* Ariz. R. Sup. Ct. 111(h); Ariz. R. Civ. App. P. 28(g).

2

had left Leila and Alayana with their paternal grandmother "who drank daily to the point of passing out," did not care for the children, and did not feed them or have food in the home, CPS took the girls into temporary custody in June 2004. ADES filed a dependency petition on July 6, 2004.[2]

¶3 Manuel spent most of the next year incarcerated on drug-related charges and convictions in Arizona and Illinois. According to reports filed by CPS case manager Joel Williamson, while Manuel was in prison, CPS had encouraged him "to avail himself of any programs offered to inmates that would address his substance abuse, parenting, and individual counseling" needs. Although Manuel had submitted in September 2004 to a psychological evaluation required by CPS, he had advised Williamson that he "had not had the time to participate in . . . inmate services."

¶4 At a dependency review hearing in February 2005, the juvenile court found that neither Manuel nor Melissa was in compliance with the case plan and approved concurrent case plan goals of family reunification and severance.[3] At the court's direction, ADES filed a motion to terminate both parents' rights but then agreed in May 2005 to

[2]CPS initially investigated these allegations in September 2003. At that time, Melissa had agreed to the appointment of a family friend, Jessica F., as guardian for the children. In late June 2004, however, Jessica told CPS she was unable and unwilling to continue caring for Leila and Alayana and demanded their immediate removal from her home.

[3]Although the record does not indicate the children were ever formally adjudicated dependent as to Manuel, he admitted their dependency and did not dispute the court's later finding that "the status of dependency continue[d] to exist."

continue the initial termination hearing to afford Melissa additional time to comply with the case plan. When the hearing was held on October 28, 2005, the court found reunification was the appropriate case plan goal, and ADES withdrew its motion for termination.

¶5        For Manuel, the reunification case plan called for him to resolve his legal issues, participate in random urinalysis, comply with the recommendations from his psychological evaluation, and maintain a safe home environment. Although he did not participate in the plan until four months after his release from prison and was initially slow to comply with its requirements related to his substance abuse, he was "very attentive to [his] parenting education [program] and supervised visitation."

¶6        By the time the juvenile court commenced another permanency hearing in June 2006, Manuel had been complying with random urinalysis more routinely, had been actively participating in parenting classes and visitation, and had been interacting well with his daughters. Although concerned about Manuel's history of substance abuse and his failure to participate in treatment, his CPS case manager opined, "The most appropriate plan for Leila and Alayana . . . is reunification with their father. The father has maintained his sobriety, is employed, and is demonstrating effective parenting skills with his daughters during supervised parenting classes." The court found Manuel to be in substantial compliance with reunification services and gave ADES the discretion to increase Manuel's visitation, provided the girls' therapists approved. Based on his improved performance, the

4

court granted ADES authority to place the children with him, which it did on October 27, 2006.

¶7      Then, on February 9, 2007, as the juvenile court was taking the logistical steps, with the approval of ADES, to dismiss the dependency proceeding, Manuel was arrested on felony charges of possessing marijuana for sale.  Before his arrest, Manuel had left his daughters in the care of his mother, even though CPS had warned him that his mother could not act as the children's caretaker because she had previously been convicted of child endangerment.  After Manuel's arrest, CPS returned the girls to the foster parents who had cared for them from July 2004 until they were placed with Manuel in October 2006.  The foster parents have expressed their willingness to provide a permanent home for Leila and Alayana.

¶8      Following Manuel's arrest, the juvenile court held another permanency hearing in May 2007 and changed the case plan goal to severance and adoption.  ADES then filed a motion to terminate Manuel's parental rights based on the length of the girls' court-ordered, out-of-home placement and allegations that, as evidenced by his recent arrest, Manuel had substantially neglected or wilfully refused to remedy the circumstances causing their removal, A.R.S. § 8-533(B)(8)(a), or, alternatively, had been unable to remedy those

circumstances and would likely be unable to parent the children in the near future, § 8-533(B)(8)(b).[4]

¶9        Manuel appeared at the initial termination hearing and entered a denial to the allegations in the motion; the juvenile court admonished him "that failure to attend future hearings without good cause shown may result [in] the hearing going forward in his absence and the termination of his parental rights." The court also provided Manuel with written notice that, absent good cause, his failure to appear for a termination hearing—including "an initial hearing, a pretrial conference, a status conference or termination adjudication"—could be deemed a waiver of his legal rights and an admission to the allegations in the motion and could result in termination of his parental rights based on the record and evidence.[5] *See* Ariz. R. P. Juv. Ct. 64(C). The notice included the dates of the scheduled hearings, including the pretrial conference set for July 24, 2007.

¶10       Manuel did not appear for the pretrial conference, and his attorney could not explain his absence. The juvenile court found that Manuel had no good cause for failing to appear at the hearing, that his absence was voluntary, that he therefore "waived all of his rights," and that "the allegations in the motion to terminate parental rights are deemed

---

[4]The juvenile court terminated Melissa's parental rights to Leila and Alayana on July 17, 2007. Melissa did not appeal the order.

[5]Although the notice stated that the "right to a trial" was among the legal rights subject to waiver for a failure to appear, we find no authority in applicable rules or statutes supporting this admonition.

admitted as to [him]." The court then proceeded with the termination hearing in Manuel's absence. During the hearing, the court admitted ADES's exhibits over objections raised by Manuel's attorney and over objections that previously had been asserted in the pretrial statement. Manuel's attorney then sought to question Manuel's current CPS case manager, Glenn Dobbin, but when counsel began asking Dobbin about Manuel's compliance with the case plan, ADES objected, arguing Manuel had waived his right to examine the witness by failing to appear.

¶11 In response, Manuel's counsel argued that Rule 66(D)(2) "does not permit the Court to proceed by default. There must be . . . some evidence presented to support . . . any findings by the Court." When the juvenile court suggested "[t]he evidence . . . could be and is in all likelihood contained in the exhibits that were admitted," Manuel's counsel responded, "I think the rule's silent, but I believe that it's clear that I could cross-examine if I wish."

¶12 When asked to provide an offer of proof, Manuel's counsel replied that she hoped to establish:

> That the children were found by the Court and by Mr. Dobbin, . . . that they could be safely returned to the father without a —without a risk of harm or substantial risk of harm and that accordingly they were. So that up until that time [of the January 2007 dependency review hearing] . . . there was no basis for a severance or even a dependency. . . . And the only thing that's changed since then is that he's been arrested and hasn't been found guilty yet.

The juvenile court reviewed its findings from the May permanency hearing and informed Manuel's counsel:

> I am exercising my discretion to decline your request to examine the caseworker because I've already found that your client has waived all of his legal rights by virtue of his failure to appear today, including the right to examine the witnesses. I'm going to consider all the exhibits and all the previous evidence that was admitted during the course of all these proceedings over your objection.

Manuel's counsel responded, "Over my vehement objection." The court then found that ADES had proven the allegations in its motion, "specifically [the] length of time in care pursuant to A.R.S. [§] 8-533(B)(8)(a) and (B)(8)(b)," by clear and convincing evidence and that terminating Manuel's parental rights was in the best interests of the children.

**Void for Vagueness**

¶13 On appeal, Manuel argues that Rule 66(D)(2), the rule setting forth how a juvenile court may proceed if a parent fails to appear at the termination adjudication hearing, is unconstitutionally vague. Specifically, he complains Rule 66(D)(2) simultaneously provides that a failure to appear constitutes an admission to the motion's allegations and yet requires the court to consider the record and evidence presented to determine whether ADES has proven grounds for termination. According to Manuel, no proof would be necessary if the allegations of the motion were deemed admitted, and the rule is therefore "internally inconsistent." He urges us to resolve this alleged ambiguity by nullifying the portion of Rule 66(D)(2) providing that a parent's "failure to appear may constitute . . . an

8

admission to the allegation[s] contained in the motion," because, he maintains, terminating parental rights based only on a constructive admission, "without a showing that [termination] is necessary or justified," would violate a parent's right to due process.

¶14  In pertinent part, Rule 66(D)(2) provides:

> If the court finds the parent . . . failed to appear at the termination adjudication hearing without good cause shown, had notice of the hearing, was properly served pursuant to Rule 64 and had been previously admonished regarding the consequences of failure to appear, including a warning that the hearing could go forward in the absence of the parent . . . and that failure to appear may constitute a waiver of rights, and an admission to the allegation[s] contained in the motion or petition for termination, the court may terminate parental rights based upon the record and evidence presented if the moving party or petitioner has proven grounds upon which to terminate parental rights.

This rule establishes procedures to give effect to A.R.S. § 8-863(C), which similarly provides:

> If a parent does not appear at the [termination adjudication] hearing, the court, after determining that the parent has been served as provided in subsection A of this section, may find that the parent has waived the parent's legal rights and is deemed to have admitted the allegations of the petition by the failure to appear. The court may terminate the parent-child relationship as to a parent who does not appear based on the record and evidence presented as provided in rules prescribed by the supreme court.[6]

---

[6]Section 8-863 and Rule 66(D)(2), which pertain to termination adjudication hearings, are applicable to these proceedings even though the July 24, 2007, hearing that Manuel failed to attend had originally been scheduled as a pretrial conference. The juvenile court had "convert[ed the pretrial conference] to a termination hearing . . . because of

*See also* § 8-537(C) (same for termination proceeding initiated by petition).[7]

**¶15**      As this court has stated,

> [a] statute is unconstitutionally vague if it fails to give "a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly" or if it allows for arbitrary and discriminatory enforcement by failing to provide an objective standard for those who are charged with enforcing or applying the law.

*In re Maricopa County Juv. Action No. JS-5209 & No. JS-4963*, 143 Ariz. 178, 183, 692 P.2d 1027, 1032 (App. 1984), *quoting Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Manuel does not argue that the provisions of Rule 66(D)(2), or the warnings required by Rules 64(C) and 65(D)(3), Ariz. R. P. Juv. Ct., fail to apprise a parent that failing to appear at one of the specified termination proceedings may have dire consequences. Nor does he assert that Rule 66(D)(2) allows for arbitrary or discriminatory enforcement against parents who absent themselves from proceedings.

---

[Manuel]'s failure to appear." We have previously held that this procedure is implicitly authorized by Rule 64(C), Ariz. R. P. Juv. Ct., which requires notification to a parent that failure to appear at an initial termination hearing, pretrial conference, or status conference could be deemed a waiver of the parent's legal rights and a constructive admission to the allegations in the termination motion. *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, ¶¶ 8-9, 12, 158 P.3d 225, 228-29 (App. 2007), *distinguishing Don L. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 556, ¶ 8, 975 P.2d 146, 149 (App. 1998) (holding, under prior statutes and rules, that no statute or rule authorized juvenile court to "default" parent for failing to appear at status conference in termination proceedings).

[7]In light of the consistency between these statutes and Rule 66(D)(2), we find no merit in Manuel's argument that the rule is contrary to statutory intent.

¶16         And, although Manuel offers an interpretation of Rule 66(D)(2) that would render one of its provisions at odds with another, his claim fails if any logical construction can be placed on the language that harmonizes those provisions. *See State v. Hansen*, 215 Ariz. 287, ¶ 7, 160 P.3d 166, 168 (2007) (statutory construction principles applied to interpret court rules); *Maricopa County No. JS-5209*, 143 Ariz. at 183, 692 P.2d at 1032 (statute "will not be held void for vagueness if any reasonable and practical construction can be given to its language").[8]  As discussed below, a reasonable and practical construction emerges when we consider each provision of the rule in the context of the others. *See Medders v. Conlogue*, 208 Ariz. 75, ¶ 10, 90 P.3d 1241, 1244 (App. 2004) (provisions of court rule must be considered in context of entire rule and consideration given to all provisions).  Accordingly, we agree with ADES that Manuel has failed to establish that Rule 66(D)(2) is unconstitutionally vague.

## Right to Participation by Counsel at Termination Hearing

¶17         Manuel argues the juvenile court erred when it prohibited his counsel from cross-examining the CPS case manager during the termination hearing that proceeded in Manuel's absence.  He contends both the language of Rule 66(D)(2) and his fundamental

---

[8]Manuel argues that it would violate due process to terminate his parental rights based only on his constructive admission of the allegations in the motion for termination after he failed to appear.  We need not address this argument at any length because Rule 66(D)(2) does not authorize such a procedure.  Rather, although a parent's failure to appear may "constitute . . . an admission," Rule 66(D)(2) also expressly requires that termination be based on the "record and evidence presented if the moving party . . . has proven grounds upon which to terminate parental rights."

11

constitutional rights entitled his counsel to conduct that examination. We agree that the rule's own language contemplates the participation of counsel to the extent sought by Manuel's counsel here.[9]

¶18 We review questions involving the interpretation of court rules de novo, and we "evaluate procedural rules using principles of statutory construction, reading those rules in conjunction with related statutes and harmonizing the two whenever possible" so as to "avoid[] any unconstitutional construction." *Fragoso v. Fell*, 210 Ariz. 427, ¶¶ 7, 13, 111 P.3d 1027, 1030, 1032 (App. 2005) (citation omitted). Furthermore, "[w]e interpret statutes and rules in accordance with the intent of the drafters, and we look to the plain language of the statute or rule as the best indicator of that intent." *Id.* ¶ 7. If the language of a rule is ambiguous, however, we may consider "a variety of elements, including the rule's context, the language used, the subject matter, the historical background, the effects and consequences, and its spirit and purpose," to determine the framers' intent. *State ex rel. Romley v. Superior Court*, 168 Ariz. 167, 169, 812 P.2d 985, 987 (1991).

---

[9]For that reason, we do not address whether Manuel possessed any fundamental or constitutional right that would have independently required the court to allow that examination. *See City of Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, ¶ 7, 32 P.3d 31, 34 (App. 2001) (appellate court does not reach constitutional issue when matter can be decided on nonconstitutional grounds). At any rate, we would be reluctant to reach the constitutional aspect of this claim because Manuel did not meaningfully develop it in his opening brief. *See, e.g., Ariz. Libertarian Party v. Schmeral*, 200 Ariz. 486, n.4, 28 P.3d 948, 953 n.4 (App. 2001) (not addressing free-speech issue when parties failed to develop argument in briefs).

12

¶19    As a threshold matter, the pertinent rules governing termination proceedings contemplate that the parent is entitled to assistance of counsel, assistance which expressly includes the right to have counsel secure the attendance of witnesses on the parent's behalf and cross-examine any adverse witnesses. *See* Ariz. R. P. Juv. Ct. 65(C)(2) and (5) (requiring juvenile court to appoint counsel and advise parent of right to counsel, right to cross-examine adverse witnesses, right to trial by court on termination motion,[10] and right to subpoena witnesses). Such rights to procedural due process may be waived, however, *see Arizona Department of Economic Security v. Redlon*, 215 Ariz. 13, ¶9, 156 P.3d 430, 434 (App. 2007), and Rule 66(D)(2) states that a parent's failure to appear at a termination adjudication proceeding "may constitute a waiver of rights."

¶20    But we can only find that a party has waived specific rights if the waiver has been voluntary, knowing, and intelligent. *Webb v. State ex rel. Ariz. Bd. of Med. Exam'rs*, 202 Ariz. 555, ¶ 10, 48 P.3d 505, 508 (App. 2002). For that reason, a parent's nonappearance cannot constitute a constructive waiver of any rights that the parent has not been specifically informed he or she could lose by failing to appear. *See, e.g., Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, ¶ 20, 118 P.3d 37, 41 (App. 2005) (general notice that parent's failure to appear might lead to waiver of legal rights insufficient to

[10]The "trial" to which a parent is entitled is the termination adjudication hearing, "an adjudicatory hearing in which the court determines whether the moving party . . . has met the burden of proving grounds upon which to terminate parental rights and whether termination is in the best interests of the child." Ariz. R. P. Juv. Ct. 66(A).

constitute waiver of specific right to jury trial); *A.J. Bayless Markets, Inc. v. Indus. Comm'n*, 134 Ariz. 243, 245, 655 P.2d 363, 365 (App. 1982) (waiver of fundamental right to cross-examine requires clear showing of intent). To that end, Rule 66(D)(2) requires that the parent has previously been admonished that the consequences of a failure to appear may be deemed a waiver of specific legal rights, including "that the hearing could go forward in the absence of the parent," that the allegations in the petition may be deemed admitted, and that the juvenile court may terminate parental rights "based upon the record and evidence presented." Because the rule does not specify that the parent also waives the right to assistance of counsel by failing to appear and because waiver of that specific right could not result without such a warning, we may infer that the framers of the rule did not contemplate such a sanction.[11]

**¶21**      Other language in the rule supports this construction. The rule's warning that a "hearing" may go forward in the parent's absence suggests that an ex parte determination is not contemplated and that the parent, albeit personally absent, will have an opportunity to be "heard." Moreover, the rules provide that, in a termination proceeding, the parent will have the right to representation by counsel and that such representation includes the right to have counsel secure witnesses on the parent's behalf and challenge any adverse witnesses

---

[11]Manuel was provided warnings about various rights he risked waiving—warnings that went beyond those required by the rule. But, here, where we are concerned about the intent of the rule's framers, the specific warnings Manuel received are not relevant to our analysis. Nor does the state contend that, by that method, the juvenile court could provide a parent fewer procedural rights than those contemplated by Rule 66(D)(2).

14

through cross-examination. *See* Rule 65(C)(5) (itemizing right of parent to counsel and right of parent to cross-examine and call witnesses). Each of those roles for counsel, as contemplated by that rule, is an important component of the fact-finding process, intended to enhance the accuracy of the juvenile court's determinations. *See Ariz. State Dep't of Pub. Welfare v. Barlow*, 80 Ariz. 249, 253, 296 P.2d 298, 300 (1956) ("hearing" in custody proceeding necessarily includes right to be represented by counsel); *In re Maricopa County Juv. Action No. JD-561*, 131 Ariz. 25, 28, 638 P.2d 692, 695 (1981) ("adversary process is subverted and made meaningless" without opportunity to test reliability of witnesses through cross-examination); *Monica C.*, 211 Ariz. 89, ¶¶ 26-27, 118 P.3d at 43 (termination hearing sufficient when it included representation by counsel, cross-examination, and opportunity to present evidence and argument); *see also Black's Law Dictionary* 852 (4th rev. ed. 1968) (hearing defined as "[p]roceeding of relative formality . . . with definite issues of fact or of law to be tried, in which parties proceeded against have right to be heard"). Had the supreme court intended to dispense with the traditional and salutary roles of counsel as to a determination of such magnitude, we believe it would have said so expressly.

¶22 Moreover, the admonition required by Rule 66(D)(2) makes clear that the potential consequences of the parent's failure to appear are discretionary with the court rather than mandatory: the parent is advised that the termination proceedings "could" go forward in the parent's absence, that the failure to appear "may" constitute a waiver of rights and an admission to the allegations. *See* Rule 66(D)(2). The discretionary nature of those

determinations, coupled with the absence of any language suggesting the court may make them ex parte, suggests an implicit role for parent's counsel in persuading the court to refrain from imposing some or all of those consequences.

¶23 Finally, as discussed below, a parent's failure to appear does not relieve the juvenile court of its obligation to assess the "record and evidence" presented and to determine whether the state has proven a statutory ground for termination by clear and convincing evidence—actions that could be enhanced by adversarial participation. In light of the fact that Rule 66(D)(2) contemplates there will be some form of adjudicatory hearing, the salutary role of counsel at such hearings, and the absence of any specific admonition or other notice to the parent that counsel's participation would be forfeited or foreclosed in the parent's absence, we conclude that, in promulgating Rule 66(D)(2), the supreme court did not intend to deprive parents who fail to appear at a termination proceeding of their right to the assistance of counsel at that hearing.

## Scope of Attorney Participation at Termination Hearing

¶24 In any legal proceeding, the scope of counsel's participation is necessarily confined to the relevant topics to be addressed. *See* Ariz. R. Evid. (implicitly confining counsel's role in presenting information and conducting cross-examination to relevant and admissible topics). Thus, the scope of counsel's participation in a termination hearing held pursuant to Rule 66(D)(2) is no broader than the scope of such hearings as set forth in the rule. That rule authorizes the juvenile court to construe the parent's absence as "an

admission to the allegation contained in the motion or petition for termination." When the court has chosen to do so, the parent's attorney may no longer contest the "allegation[s]" in the petition because the truth of those allegations is no longer in dispute.

¶25    To resolve Manuel's claim, however, we must also determine the scope of the parent's "admission to the allegation[s]" under the rule. As exemplified in this case, the allegations in a motion or petition for termination can include both factual assertions and more general conclusions of law. *See* Ariz. R. P. Juv. Ct. 64(A) (requiring motion for termination of parental rights to include "grounds for termination"); § 8-533(B) (itemizing legal grounds that sufficient evidence must support to justify termination). Here, the record demonstrates that Manuel's counsel sought to cross-examine the case manager not to contest the factual assertions but rather to draw attention to other facts that would address (1) whether the evidence supported the legal conclusion that Manuel was an unfit parent and (2) whether the best interests of the children would justify termination of his parental rights. Therefore, we must determine whether the rule contemplates that, by failing to appear, a parent admits the legal conclusions urged by the motion or petition, or whether the parent admits only the specific factual assertions contained therein.

¶26    The other portions of Rule 66(D) assist us in resolving that question. Although the rule does not directly define the scope of a parent's admission to an allegation, it clarifies that such an admission cannot, standing alone, support the termination of the parent's rights. Notwithstanding the language in the rule allowing the court to deem the

allegations of the motion admitted, the rule provides that the court may terminate a parent's rights only if the petitioner or moving party has "proven grounds" for termination "based upon the record and evidence presented."

¶27 This requirement—that there be evidence meeting a standard of proof in support of the grounds alleged—mandates more than a cursory review of the record for a "factual basis." Significantly, Rule 66(D)(1)(c) provides that such a cursory review is sufficient when a parent admits the allegation of a petition or motion in person. *See* Ariz. R. P. Juv. Ct. 66(D)(1)(c) (when parent enters oral admission, juvenile court need only "determine whether factual basis exists" to support termination). From this, we can confidently conclude that Rule 66(D)(2) contemplates something different—and more rigorous—when it employs different language to more carefully describe the juvenile court's fact-finding duties when, as here, a parent has admitted allegations by failing to appear. *See State v. Jennings*, 150 Ariz. 90, 93, 722 P.2d 258, 261 (1986) (if drafter had intended language found in one provision to apply to related provision, it could have employed same language in both). Notably, the rule's requirement that grounds be proven by the moving party is the rule's only major deviation from the text of the statute that the rule was designed to facilitate.[12] We assume the supreme court chose this language intentionally and was aware of the implications of doing so.

---

[12]We do not suggest that the language added by the supreme court is inconsistent with the statute. Indeed, § 8-863(C) specifically invites the supreme court to prescribe procedural rules to apply the statute's terms.

¶28        In sum, although the rule provides that a parent's failure to appear may be construed as a constructive admission to the allegations of a motion or petition, the contemplated scope of those admissions must be understood in the context of the rule's other provisions. *See State v. Hansen*, 215 Ariz. 287, ¶ 7, 160 P.3d 166, 168 (2007) (principles of statutory construction used to interpret court rules); *State v. Wagstaff*, 164 Ariz. 485, 491, 794 P.2d 118, 124 (1990) ("We strive to construe a statute and its subsections as a consistent and harmonious whole."). That language imposes a duty on the juvenile court to determine whether the grounds for termination have been proven by the record and evidence—a process that would become unnecessary if we construed a parent's failure to appear as a wholesale admission to the legal grounds contained in the allegations. *See State v. Bonnell*, 171 Ariz. 435, 437, 831 P.2d 434, 436 (App. 1992) (appellate court required to avoid interpretation of rule provision that would render another meaningless).[13] Thus, when we read the pertinent language relating to a parent's constructive admissions so as to harmonize it with the express requirements for a termination hearing set forth in that

---

[13]And, because we cannot read one provision to render another redundant or superfluous, we clarify that the state's burden to independently prove the allegations, as expressly required by the rule, exists regardless of whether the allegations have been deemed admitted by the parent. Such a construction safeguards the interests of the child in an accurate determination of whether the parental relationship should be terminated, an interest that persists even when a parent has failed to appear for a hearing. *See* Ariz. R. P. Juv. Ct. 36 ("The rules should be interpreted in a manner designed to protect the best interests of the child . . . ."). It is also consistent with the approach set forth in Rule 66(D)(1). Even under the relaxed standard applied there for a parent's *in person* admissions, the rule requires the juvenile court to determine independently whether a "factual basis exists" to support those admissions to the allegations. *See* Ariz. R. P. Juv. Ct. 66(D)(1)(c).

19

subsection of the rule, we conclude that the parent admits only the factual contentions contained in the motion. The parent does not thereby concede that those factual allegations sustain the quantum of evidence required to establish the legal grounds for terminating a parent's rights. Rather, the determination of whether the evidence, including admissions, establishes clearly and convincingly at least one ground for terminating a parent's rights remains a relevant and contestable topic at the hearing.[14]

¶29 Division One of this court has reached a similar, although not identical, conclusion. In *Christy A. v. Arizona Department of Economic Security*, 217 Ariz. 299, ¶¶ 7-8, 33, 173 P.3d 463, 467, 472 (App. 2007), the court remanded the severance case for rehearing after the juvenile court prohibited the mother or her attorney from attending the second day of a termination adjudication hearing, based on a "default" that had been entered after the mother failed to appear on the first day of the hearing. The appellate court concluded:

> [I]n light of a parent's fundamental parenting interest, we hold the entry of default or, more properly stated, a finding of waiver of rights, precludes [the mother] from affirmatively presenting testimony or other documentary evidence to contest the statutory bases for termination, but the requirement of fair procedures mandates giving [the mother] the opportunity to remain in the courtroom and participate. That right of participation includes cross-examination of ADES's witnesses . . . .

---

[14]During oral argument, the state did not dispute this interpretation of the rule.

20

*Id.* ¶ 24. In holding the mother's right to participate in the hearing would be "limited," the court in *Christy A.* found guidance in "established case law concerning the entry of default judgments." *Id.* ¶¶ 16, 23, 29.

¶30    Like Division One in *Christy A.*, we also find some guidance in cases addressing the effect of an entry of default under Rule 55, Ariz. R. Civ. P. As explained in the context of Rule 55:

> A default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover. All well-pleaded facts are admitted by a default, *Postal Ben. Ins. Co. v. Johnson*, 64 Ariz. 25, 165 P.2d 173 (1946), but the defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.

*S. Ariz. Sch. for Boys, Inc. v. Chery*, 119 Ariz. 277, 281-82, 580 P.2d 738, 742-43 (App. 1978); *Moran v. Moran*, 188 Ariz. 139, 146, 933 P.2d 1207, 1214 (App. 1996) (same; court properly declined default judgment where unsupported by law). Thus, our courts have construed the effect of an admission by default in the context of our civil rules of procedure consistently with our interpretation of Rule 66(D)(2)—that factual allegations are deemed admitted but legal conclusions are not.

¶31    In reaching our conclusion, based wholly on our construction of Rule 66(D)(2), we disagree with *Christy A.* to the extent it could be read to preclude a parent's counsel from "contest[ing] the statutory bases for termination" and from presenting affirmative evidence to do so. 217 Ariz. 299, ¶ 24, 173 P.3d at 470. We can find no language in the rule supporting either prohibition. As we have stated, the rule requires that

21

there be sufficient support for terminating a parent's rights. Nor does any language in the rule address the ways in which an attorney may participate at the "default" termination hearing. And we cannot assume that the rule's implicit limitation of the relevant *scope* of the hearing necessarily requires any limitation in the traditional *means* of attorney participation, a topic on which the rule is silent.[15]

¶32       Applying the above analysis here, Manuel's counsel was entitled to participate in the termination hearing to the extent that participation fell within the scope of the contested issues at the proceeding. The truth of the factual allegations contained in the motion was not a contested issue because the juvenile court found Manuel had admitted these allegations by failing to appear for the hearing. However, Rule 66(D)(2) also required the court to determine whether those factual allegations, coupled with the record and evidence presented, proved the grounds for termination alleged in the motion. Manuel's counsel was therefore entitled to elicit evidence in support of Manuel's contention that the

---

[15]Our opinion differs from *Christy A.* in approach as well. In *Christy A.*, the court found a parent's fundamental right to due process in the severance proceeding included the right to have counsel participate. 217 Ariz. 299, ¶¶ 28-29, 173 P.3d at 471. But due process rights may be waived, *see Arizona Department of Economic Security v. Redlon*, 215 Ariz. 13, ¶ 9, 156 P.3d 430, 434 (App. 2007), and *Christy A.* does not address whether the notice and admonition to the parent contemplated by Rule 66(D)(2), coupled with the parent's failure to appear, constitute a valid waiver of the specific rights addressed in *Christy A.* We have herein addressed the waiver question only to the extent it informs the supreme court's intent in drafting Rule 66(D)(2) and do not suggest that *Christy A.* has necessarily imposed an unjustified due process overlay on the rule. *See Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, ¶ 20, 118 P. 3d 37, 41 (App. 2005) (general notice to parent that failure to appear might lead to waiver of legal rights insufficient to constitute waiver of specific right to jury trial).

factual allegations, albeit true, did not justify such a finding. Because the record demonstrates that Manuel's counsel did not seek to examine the CPS case manager to contest the factual assertions in the motion but rather to emphasize other evidence suggesting that the factual allegations were insufficient to prove the grounds for termination, the court erred in precluding that examination.[16]

¶33　　　However, we also find this error harmless. *See Monica C.*, 211 Ariz. 89, ¶ 22, 118 P.3d at 42 (harmless error review appropriate for violation of procedural rule). Through counsel, Manuel had argued passionately that his arrest, standing alone, should not be the basis for terminating his parental rights in light of his improved efforts to provide a fit home for his children during the course of the dependency. Manuel's counsel sought to examine the case manager to elicit such facts—and to emphasize that the state had drawn conclusions and taken actions that implicitly acknowledged Manuel's fitness as a parent. But the record and the evidence ADES presented at the hearing included each of those facts, and the juvenile court was therefore well aware of the procedural history of the case. Thus, the record before us demonstrates that the court was fully aware of, and properly considered,

---

[16]We recognize that allegations stated in motions to terminate may be, and often are, phrased to assert mixed questions of law and fact. For this reason, we acknowledge that enforcing the precise boundaries of appropriate attorney participation will require the juvenile court to exercise sound judgment when analyzing the distinction between a factual allegation and a legal conclusion based thereon. But we can find no further guidance in the rule for a more specific standard, and it is the province of our supreme court to amend or clarify the rule if it feels such further guidance in necessary. *See Bergeron ex rel. Perez v. O'Neil*, 205 Ariz. 640, ¶ 28, 74 P.3d 952, 962 (App. 2003) (domain of supreme court to supplement or supercede its procedural rules).

all of the information Manuel's counsel sought to present when seeking leave to examine the case manager.

**Admission of Exhibits**

¶34        Manuel next maintains the juvenile court erred by admitting exhibits into evidence without supporting testimony. Relying on our decision in *Adrian E. v. Arizona Department of Economic Security*, 215 Ariz. 96, ¶ 23, 158 P.3d 225, 231-32 (App. 2007), the state maintains that, because its exhibits had been admitted at previous hearings, they were part of the record upon which the court could base its findings. Although the court failed to adhere to the rules of evidence in admitting one of ADES's exhibits, we agree with ADES that, pursuant to *Adrian E.*, those exhibits that had been duly admitted at prior hearings were part of the record and thus properly considered by the court.[17]

¶35        However, the court erred in admitting and considering exhibit 21, apparently a portion of a Pima County Sheriff's Department incident report describing the circumstances of Manuel's arrest in February 2007. Although the report was admitted at the permanency hearing in May 2007 and therefore, as ADES argues, was also part of the record subject to the juvenile court's review, Manuel objected to its admission at both the

_____

[17]Although Manuel suggested at oral argument that the "record," undefined by Rule 66(D)(2), should not include these documents, he did not raise this issue in his briefs. We therefore will not consider it. *See Van Loan v. Van Loan*, 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977).

May permanency hearing and the termination adjudication hearing on the ground that it lacked foundation.[18]

¶36     We agree with Manuel that the juvenile court abused its discretion in admitting the sheriff's incident report without requiring evidence of its authenticity, as it does not appear to be a self-authenticating document under Rule 902, Ariz. R. Evid.  *See* Ariz. R. Evid. 901(a) (requiring authentication as condition precedent to admissibility); Ariz. R. P. Juv. Ct. 45(A) (applicability of Arizona Rules of Evidence to dependency and termination proceedings).  Nonetheless, we find no prejudice resulting from the admission of this report. Although it provides details of Manuel's arrest not found in any other document in the record, a CPS case manager's report of February 13, 2007, admitted at the permanency hearing and again at the termination adjudication hearing, stated the nature of the charges against Manuel as well as the effect of Manuel's arrest on his children, who had been left for several days with an unauthorized caretaker as a result.  In light of this and other evidence in the case, we cannot conclude the court would have ruled any differently if the sheriff's incident report had not been admitted.  *See Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, ¶ 7, 977 P.2d 807, 810 (App. 1998).

---

[18]This court previously declined to accept jurisdiction of Manuel's petition for special action challenging the juvenile court's permanency order. *See Manuel M. v. Sabalos*, No. 2 CA-SA 2007-0059 (order filed July 18, 2007).  We take judicial notice of the transcript of the May 4 permanency hearing submitted as an appendix to that special action petition.

## Conclusion

¶37 Although we find the juvenile court erred in admitting evidence without proper foundation and in denying Manuel's counsel an opportunity to cross-examine a CPS case manager about the sufficiency of the evidence to support the grounds alleged for termination, we conclude these errors were harmless. For the foregoing reasons, as well as those stated in our separate memorandum decision, we affirm the juvenile court's order terminating Manuel's parental rights.

_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Judge


_____
GARYE L. VÁSQUEZ, Judge