NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ANDREW B., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.B., S.B., A.B., *Appellees*.[1]

No. 1 CA-JV 14-0202
FILED 6-16-2015

Appeal from the Superior Court in Maricopa County
No. JD509060
The Honorable Rodrick J. Coffey, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee Department of Child Safety*

---

[1] The caption has been amended to safeguard the children's identities pursuant to Administrative Order 2013-0001.

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Michael J. Brown joined.

---

**T H U M M A**, Judge:

¶1        Andrew B. (Father) challenges the superior court's order terminating his parental rights to his children, M.B., S.B., and A.B. Finding no error, that order is affirmed.

**FACTS[2] AND PROCEDURAL HISTORY**

¶2        Father is the biological father of M.B., born in 2005; S.B., born in 2008 and A.B., born in 2009 (the Children). Amanda C. (Mother) is the biological mother of the Children; her parental rights have been terminated and she is not a party to this appeal.

¶3        In January 2011, the Department of Child Safety (DCS) took the Children into custody after receiving reports that Father left the Children with a family friend because he was afraid he would hurt them and Mother had been hospitalized. When the Children came into care, two alleged Father hit them and M.B. reported that a neighbor's child, M.L., had touched her inappropriately. Father generally denied the allegations and refused to believe the allegations against M.L. DCS filed a dependency petition alleging Father had neglected the Children by not taking care of their needs and by failing to protect them from Mother's substance abuse and domestic violence. In February 2011, the Children were found dependent after both Mother and Father denied the allegations but submitted the matter to the court. The court adopted a family reunification case plan.

¶4        DCS provided, and Father participated in, many family reunification services. In June 2012, Father filed a motion for change in physical custody, asking that S.B. and A.B. be placed in his physical

---

[2] This court views the evidence in a light most favorable to sustaining the superior court's findings. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207 ¶ 2, 181 P.3d 1126, 1128 (App. 2008).

custody; by that time, the dependency had been pending for about a year and a half. In August 2012, over DCS' objection, the superior court granted Father's motion placing S.B. and A.B. in his physical custody. Shortly thereafter, S.B. incurred an eye injury and Father and S.B. gave conflicting stories as to how the injury occurred. In September 2012, DCS received a report that Father had been mugged at the doorway to his hotel room while S.B. and A.B. were inside the room. During this time, Father also missed three visits with M.B., including a visit on her birthday. Father also refused to transport S.B. and A.B. to some visits with M.B., who was not in Father's physical custody.

¶5        In December 2012, Father admitted he was aware of a situation where M.L. and S.B. were in a closet and, when Father found them, it looked "like [M.L.] was helping with a stuck zipper on her [S.B.'s] pants." S.B. reported inappropriate touching to Father but, despite the fact that M.B. had made similar allegations against M.L, Father did not believe S.B. Father continued to allow M.L. to be in the home when S.B. was present. In February 2013, S.B. made disclosures to a therapist of additional inappropriate touching and contact by M.L. Father did not believe S.B. and his immediate response was to let M.L.'s mother know of the allegations. Father also directed S.B. not to discuss any issues of a sexual nature with her therapist and instead only bring those issues to him. S.B. also told a case aide that Father said she could not tell anyone about the spankings she had received from Father.

¶6        Later in February 2013, S.B. and A.B. were removed from Father's physical custody based on his failure to protect S.B. and to respond appropriately to S.B.'s allegations against M.L. By that time, the dependency had been pending for more than two years. After S.B. and A.B. were removed from his physical custody, Father missed visits with them.

¶7        In September 2013, over Father's objection, the superior court changed the case plan to severance and adoption. DCS' motion for termination alleged Father had been unable to remedy the circumstances that had caused the Children to be in an out-of-home placement for more than 15 months and there was a substantial likelihood he would be unable to exercise proper and effective parental care and control in the near future.

¶8        The superior court held a severance trial over the course of six days in the first part of 2014. In June 2014 (reflected in a more formal July 2014 order), the superior court granted the motion and terminated Father's parental rights to the Children based on 15-months time-in-care. Father timely appealed and this court has jurisdiction under Arizona Revised

Statutes (A.R.S.) sections 8-235, 12-120.21(A)(1) and -2101(A)(1) (2015)[3] and Arizona Rules of Procedure for the Juvenile Court 103–04.

## DISCUSSION

### I. DCS Made Diligent Efforts To Reunify The Family.

**¶9** On appeal, Father claims DCS failed to make diligent efforts to reunify the family because it did not provide reunification services other than visitation after February 2013, when S.B. and A.B. were removed from his care the second time. Father further contends DCS' failure to make diligent efforts is supported by the fact that DCS did not follow its own experts' recommendation for therapeutic visitation between Father and M.B.

**¶10** As applicable here, before DCS may terminate the parent-child relationship, it must offer appropriate reunification services. *See Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192 ¶ 34, 971 P.2d 1046, 1053 (App. 1999). DCS satisfies this requirement if it provides the parent with "the time and opportunity to participate in programs designed to help [him or] her become an effective parent." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353, 884 P.2d 234, 239 (App. 1994).

**¶11** DCS provided Father and the Children numerous family reunification services, including child and family team meetings, parent aide services, a psychological consultation and evaluation, a psychiatric evaluation, a psychosexual evaluation, therapeutic visitation, supervised visitation, a self-referral for individual counseling and a family reunification team. The fact that DCS did not offer services other than supervised visitation after S.B. and A.B. were removed a second time is not dispositive. In March 2013 and September 2013, the superior court found without objection that DCS had made reasonable efforts to secure permanency, including providing various services for Father. Moreover, futile efforts are not required and DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service" offered. *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353, 884 P.2d 234, 239 (App. 1994); *see also Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 94 ¶ 20, 219 P.3d 296, 304 (App. 2009).

---

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶12        Although Father argued that the facts leading to the second removal of two of the Children are sufficiently different from the first removal and thus DCS was required to offer Father additional services, the court disagreed. The range of services offered to Father were designed to help him keep the Children safe and promote effective parenting without the use of physical force. Father, however, demonstrated that he was unwilling or unable to protect the Children and continued to "engage in deception to prevent anyone from knowing when his children [had] been harmed by him or others." Father was given "the time and opportunity to participate in programs designed to help [him] become an effective parent" and, on this record, providing further services would have been futile. *See Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353, 884 P.2d 234, 239 (App. 1994). Furthermore, there is no evidence that Father sought specific additional services after S.B. and A.B. were removed from his physical custody the second time. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179 ¶18, 319 P.3d 236, 241 (App. 2014) (noting it is "incumbent" on parent to raise with superior court concerns about reunification services).

¶13        Similarly, Father argues that DCS should have offered him therapeutic visits with M.B. after the suspension of visits in 2012. Therapeutic visits with M.B. were offered in 2011 but, after a December 2011 psychological evaluation revealing M.B.'s considerable anxiety regarding visits with Father, the psychologist recommended visits cease. In February 2012, based on reports from the earlier therapeutic visits in 2011, the psychologist opined that visits could resume "as long as the visits continue to be positive and appropriate." Visits resumed, but in November 2012, M.B. continued to express significant anxiety at the prospect of having visits with Father and no longer wanted to see him. Father consented to the cessation of visits with M.B and there is no evidence Father pursued obtaining further visits after this agreement.

¶14        Reasonable evidence supports the superior court's finding that the provision of additional services after the second removal would have been redundant and futile given Father's failure to change his behaviors. Accordingly, DCS fulfilled its obligation to make diligent efforts to reunify the family. *See Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192 ¶ 34, 971 P.2d 1046, 1053 (App. 1999).

**II.    The Record Supports The Finding That Father Failed To Remedy The Circumstances And Was Unable To Parent The Children.**

¶15    The superior court terminated Father's parental rights pursuant to A.R.S. § 8-533(B)(8)(c). This court will reverse an order terminating parental rights only if the factual findings are clearly erroneous or not supported by the record. *See Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, 982 P.2d 1290, 1291 (App. 1998). This court views the evidence in a light most favorable to sustaining the superior court's findings. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207 ¶ 2, 181 P.3d 1126, 1128 (App. 2008).

¶16    Pursuant to A.R.S. § 8-533(B)(8)(c), the Children must have been in an out-of-home placement for a "cumulative total period of fifteen months or longer" and the parent must have been "unable to remedy the circumstances that cause[d] the child[ren] to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." It is undisputed that the Children were in an out-of-home placement for a cumulative total period far exceeding 15 months.

¶17    After Father participated in and completed numerous services provided by DCS, both A.B. and S.B. were returned to his care for several months before being removed a second time. Despite Father's completion of services, he was unable to remedy the circumstances that caused the Children to be in an out-of-home placement. For example, the superior court noted that Father allowed M.L. to be in the home, even after M.B. and S.B. both accused M.L. of inappropriate sexual conduct. Father admitted that the accusations by two of the Children of the same improper conduct by the same individual raised a "red flag," but it did not cause him to prohibit contact with M.L. Moreover, Father called S.B. a liar and, instead of getting help for S.B. given the disclosures, he informed M.L.'s mother to warn her of the allegations. The superior court found, and the record supports, that "[t]hroughout the relevant time period, Father has ignored or minimized negative situations which put his children in danger."

¶18    The superior court also found, and the record also supports, that Father's continued use of physical punishments even after completing parent aide and family reunification services and Father's efforts to conceal his use of such punishments, evidenced his failure to change his behaviors. Moreover, Father had been given more than two years to participate in services designed to improve parenting skills.

**¶19**        Even if Father and M.B. had participated in more therapeutic visitation, Father has not shown how this would have changed the fact that he engaged in deception and was unwilling or unable to protect the Children. Moreover, DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service" offered. *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353, 884 P.2d 234, 239 (App. 1994). Although Father argues the evidence received should have been weighed differently, this court does not reweigh the evidence. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282 ¶ 12, 53 P.3d 203, 207 (App. 2002) (citing cases).

**¶20**        Despite Father's participation in DCS' services, Father failed to make the necessary changes in his behavior to ensure the Children's safety. Accordingly, viewed in the light most favorable to sustaining the order, this record supports the factual findings resulting in the termination of Father's parental rights pursuant to A.R.S. § 8-533(B)(8)(c). *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207 ¶ 2, 181 P.3d 1126, 1128 (App. 2008).

**III.    The Record Supports The Finding That Terminating The Parent-Child Relationship Was In The Children's Best Interests.**

**¶21**        DCS was required to show by a preponderance of the evidence that severance was in the best interests of the Children. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41, 110 P.3d 1013, 1022 (2005). The evidence must show either that the Children "would derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 6, 100 P.3d 943, 945 (App. 2004) (citation omitted).

**¶22**        The trial evidence shows M.B. was in a potential adoptive placement with a relative and that S.B. and A.B. were in a potential adoptive placement. In addition, the DCS caseworker testified that termination of Father's parental rights would be in the best interests of the Children because they were adoptable, "lovable kids, doing great [] now" and DCS had concerns about Father's use of physical punishment and lack of stable housing. The trial evidence supports the superior court's finding that termination of Father's parental rights would "benefit the children by freeing them for adoption and providing them permanency after a lengthy time in care." Furthermore, trial evidence supports the conclusion that it would be in the Children's best interests to "not be placed with a parent who refuses to acknowledge dangers and actual harm to the children and who encourages them to lie or conceal harm that is inflicted upon them."

These findings support the conclusion that severance was in the best interests of the Children. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41, 110 P.3d 1013, 1022 (2005).

## CONCLUSION

**¶23**        Because the superior court did not err, the order terminating Father's parental rights to M.B., S.B. and A.B. is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED : ama