NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO W.M.

No. 1 CA-JV 25-0167

FILED 04-08-2026

Appeal from the Superior Court in Maricopa County
No. JD532965
The Honorable Peter A. Thompson, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

David W. Bell, Attorney at Law, Mesa
By David W. Bell
*Counsel for Child*

Arizona Attorney General's Office, Phoenix
By Ingeet Pandya
*Counsel for Appellee Arizona Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Veronika Fabian and Vice Chief Judge David D. Weinzweig joined.

---

**B R O W N**, Judge:

¶1  Ashley C. ("Mother") appeals from the juvenile court's order terminating her parental rights on the grounds of abandonment and six months' time-in-care.  Because she has not shown the court clearly erred, we affirm.

### BACKGROUND

¶2  In April 2024, Mother gave birth to W.M.; he was born substance exposed to marijuana.  Soon after his birth, the Department of Child Safety ("DCS") petitioned for dependency as to Mother based on substance abuse and mental health concerns.  She did not contest the allegations and the court found W.M. dependent.

¶3  DCS provided Mother with various services, including drug testing, substance abuse treatment, parenting classes, and supervised visitation.  Throughout 2024, Mother's participation in services was sporadic; many of her referrals were closed out for lack of engagement and she missed several supervised visits.  Mother's last visit that year with W.M. occurred on December 12.  After the visit ended early because of W.M. crying inconsolably, a DCS case aide found what appeared to be drug paraphernalia in the diaper bag Mother brought to the visit.  Mother did not have another visit or otherwise see W.M. until June of the following year.

¶4  In March 2025, DCS moved to terminate Mother's parental rights to W.M. on the grounds of abandonment and six months' time-in-care under A.R.S. § 8-533(B)(1), (8)(b).  DCS alleged in part that Mother failed to maintain a normal relationship with W.M. by failing to maintain regular contact, offer reasonable support, or provide normal supervision.  Mother did not appear at a pretrial conference in June.  After noting Mother was properly served and admonished about the consequences for not appearing, the court proceeded with a termination hearing.  Finding

2

Mother's failure to appear constituted an admission of the allegations in the motion, the juvenile court concluded that DCS proved both grounds for termination by clear and convincing evidence and that termination of her parental rights was in W.M.'s best interests.

**¶5** Mother moved to set aside the termination order, explaining she was hospitalized at the time of the hearing. The court granted Mother's motion, setting another date for a termination hearing. Mother's engagement in services improved. She regularly attended visits with W.M. as of June 26, and she participated in parenting classes. Yet she refused to complete drug tests and her referrals for substance abuse treatment closed for lack of engagement.

**¶6** The juvenile court held a termination hearing in September 2025, and again Mother did not appear. The court determined Mother lacked good cause for failing to appear and thus waived her right to challenge the allegations in DCS's motion. After hearing testimony from the DCS caseworker, the court concluded that DCS proved the statutory grounds for termination, which was in W.M.'s best interests. The court made its findings orally on the record and later entered written findings of fact and conclusions of law. Mother did not seek to set aside the order but she timely appealed. We have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

**¶7** Mother challenges the juvenile court's findings on the statutory grounds for termination and that termination was in W.M.'s best interests. In reviewing a court's order terminating parental rights, we review factual findings for an abuse of discretion, affirming if the findings are supported by reasonable evidence. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 30 (2023). We will affirm the court's legal conclusion that clear and convincing evidence supports at least one statutory ground for termination unless that conclusion is clearly erroneous. *Id.* at 478–79, ¶ 31.

**¶8** Before addressing Mother's arguments, we address Mother's failure to appear for the termination hearing. When a parent fails to appear for a termination hearing, after being properly served and notified about the consequences of failing to appear, the court may find the parent has waived their legal rights and is deemed to have admitted the allegations in the motion or petition to terminate. A.R.S. § 8-863(C); Ariz. R.P. Juv. Ct. 351(c)(2)(A). The court may proceed with the hearing and terminate the

parent's rights based on the record and evidence presented. A.R.S. § 8-863(C); Ariz. R.P. Juv. Ct. 353(f)(1)–(2).

**¶9** Here, the court found that Mother admitted the allegations in the motion by failing to appear without good cause, and Mother has not challenged this determination. Thus, we consider those admissions in evaluating whether the court's legal conclusions are supported by the evidence. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 213–14, ¶ 28 (App. 2008) (concluding the failure to appear concedes the factual contentions in a motion to terminate, but not the legal question of whether those factual allegations are enough to establish legal grounds for termination).

### A. Abandonment

**¶10** The juvenile court found that DCS presented clear and convincing evidence that Mother abandoned W.M. "Abandonment" means "the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision." A.R.S. § 8-531(1). This includes a finding "that a parent has made only minimal efforts to support and communicate with the child." *Id.*

**¶11** Reasonable evidence supports the juvenile court's abandonment finding. DCS records show Mother did not visit or see W.M. between December 12, 2024, and June 25, 2025. True, Mother was hospitalized from May 10 through June 6, 2025. But Mother's visitation was inconsistent before that period, as the DCS caseworker explained. The record shows that Mother often failed to appear at scheduled visits through July and August of 2024, and in September of that year her referral for supervised visitation was closed out based on lack of engagement. When DCS requested a new referral, the service provider was unable to schedule a visit with Mother because DCS could not contact her, and another visit in October was canceled. The juvenile court had sufficient evidence to conclude Mother failed to provide reasonable support, maintain regular contact, or make more than minimal efforts to support and communicate with W.M. for a significant period of time. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249–50, ¶ 18 (2000).

**¶12** Mother argues the court's abandonment finding is unwarranted because she had some contact with W.M. through visits in 2024, and she consistently engaged in visitation and parenting classes after June 2025. We are not persuaded. A parent cannot defeat an abandonment finding by having sporadic contact with their child; under A.R.S. § 8-531(1),

a parent abandons their child by failing to maintain *regular* contact. The record shows Mother's visitation with W.M. was not regular from July 2024 through April 2025. We acknowledge that Mother resumed visits after June 2025 and engaged in some other services following her hospitalization. She highlights the DCS caseworker's testimony that Mother was consistently prepared, implemented lessons she learned about parenting from other services, and that Mother established a bond with W.M. Though commendable, Mother's post-motion efforts to re-establish a relationship with W.M. do not absolve her failure to maintain regular contact with W.M. for almost a year. *Cf. Maricopa Cnty. Juv. Action No. JS–500274*, 167 Ariz. 1, 8 (1990). Mother has shown no error. Because we affirm the court's finding on termination, we need not address whether sufficient evidence supports the six months' time-in-care ground.

### B.     Best Interests

**¶13**         Mother also argues the juvenile court failed to consider the totality of the circumstances, specifically her efforts to re-engage with services after her hospitalization, and in determining that termination of her parental rights was in W.M.'s best interests. But the court found Mother did not "significantly participate" in her case, which shows the court considered Mother's engagement in services in assessing the totality of the circumstances.

**¶14**         Moreover, we presume the court made "every finding necessary to support the [termination] order if reasonable evidence supports the order." *Mary Lou C. v. Ariz. Dep't of Econ Sec.*, 207 Ariz. 43, 50, ¶ 17 (App. 2004). DCS's motion alleged that termination would further the plan of adoption for W.M., which would provide him with "permanency and stability," and that W.M. resided with his adoptive placement which met his needs. Mother admitted these facts by failing to appear at the termination hearing. The DCS caseworker testified that W.M.'s placement met his needs, W.M. was bonded to and comfortable with the placement, and the placement wanted to adopt him. The court had sufficient evidence to find that W.M. would benefit from termination  and thus conclude that termination was in W.M.'s best interests. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 13 (2018) ("[T]ermination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied.").

**¶15**         Even so, Mother contends the court erred by using findings of fact and conclusions of law DCS submitted after the hearing, which essentially track the allegations in the termination motion. She claims DCS

"cannot merely cut and paste the allegations" from its own motion but provides no authority supporting this position. The findings include the same allegations Mother conceded through her failure to appear, and reasonable evidence at the termination hearing supports those allegations. Mother has not shown the best interests' findings and conclusions are clearly erroneous.

**CONCLUSION**

¶16   We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:   JR