NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PRECIOUS B., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.E., *Appellees*.[1]

No. 1 CA-JV 15-0129
FILED 11-5-2015

Appeal from the Superior Court in Maricopa County
No. JD23628
The Honorable Lisa Daniel Flores, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll, Scottsdale
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee Department of Child Safety*

---

[1] The caption has been amended to safeguard the child's identity pursuant to Administrative Order 2013-0001.

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Peter B. Swann joined.

---

**T H U M M A**, Judge:

¶1 Precious B. (Mother) appeals from the superior court's order terminating her parental rights to J.E., arguing there was no reasonable evidence to support a statutory ground for termination and that termination was not in J.E.'s best interests. Because the record supports the superior court's findings, the order is affirmed.

### FACTS[2] AND PROCEDURAL HISTORY

¶2 J.E. was born in 2009. In May 2013, the Department of Child Safety (DCS) took J.E. into custody after receiving reports of Mother's substance abuse and neglect of the child. DCS filed a dependency petition alleging substance abuse and mental illness and that Mother neglected J.E. by leaving him with her other young children for extended periods and not meeting his basic needs. In June 2013, J.E. was found dependent and the superior court adopted a family reunification case plan, directing that services for Mother include a parent aide, supervised visitation at least once a week, a psychological evaluation, substance abuse testing and treatment, transportation and that Mother self-refer for counseling through Indian Health Services (IHS).[3]

¶3 Mother failed to attend a December 2013 report and review hearing. Mother also failed to attend a March 2014 permanency planning hearing, where counsel indicated Mother had no contact with her since early December 2013. Mother, who continued to have no contact with her attorney, failed to appear at a June 2014 hearing where the court changed

---

[2] This court views the evidence in a light most favorable to sustaining the superior court's findings. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207 ¶ 2 (App. 2008).

[3] Although Mother is an enrolled member of the Navajo Nation, J.E. is not and the Indian Child Welfare Act does not apply to this case.

the case plan to severance and adoption. DCS then filed a motion to terminate, alleging nine-months time-in-care and abandonment. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(1), (8)(a) (2015).[4]

**¶4** At a severance adjudication held in March 2015, Father (who is not a party to this appeal) did not contest the motion, and the superior court received testimony from the DCS caseworker and from Mother. The case worker testified that Mother's efforts to participate in services provided were no "more than minimal." Mother's participation in drug testing was "minimal," having tested just 13 of 36 required times. Mother participated in a psychological evaluation, which identified possible mood, bipolar and personality disorders. Mother admitted that she agreed to self-refer to IHS but failed to do so because she "felt like [she] didn't need it."

**¶5** Although a family member was available to supervise visits, Mother visited J.E. only eight times since J.E. had been taken into care nearly two years earlier. Mother testified visits were difficult because she did not have a car, but admitted knowing DCS would provide her a bus pass, adding it was inconvenient to get a bus pass. Mother admitted she did not send J.E. any cards, gifts or letters while J.E. was in care and rarely called J.E. Because Mother did not regularly visit J.E., parent aide services were not put in place. Although Mother testified to completing a four-hour online parenting course, she admitted she did so the night before the trial.

**¶6** The caseworker testified that severance was in J.E.'s best interests and that the current placement with a family member is a potential adoptive placement. Mother admitted she has not maintained a normal relationship with J.E. but believes J.E. recognizes her as his mother and misses her.

**¶7** After taking the matter under advisement, the superior court granted the motion to terminate on both grounds. This court has jurisdiction over Mother's timely appeal pursuant to A.R.S. §§ 8-265, 12-120.21(A)(1) and 12-2101(A)(10) and Arizona Rules of Procedure for the Juvenile Court 103-04.

---

[4] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**DISCUSSION**

**I.      The Superior Court Did Not Err In Terminating Mother's Parental Rights.**

**¶8**          As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground in A.R.S. § 8–533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.,* 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.,* 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights so long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.,* 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

**A.      Nine-Months Time-In-Care.**

**¶9**          DCS was required to prove that J.E. was "in an out-of-home placement for a cumulative total period of nine months or longer pursuant to court order . . . and [Mother] has substantially neglected or willfully refused to remedy the circumstances that cause the child to be in an out-of-home placement." A.R.S. § 8-533(B)(8)(a).

**¶10**          Mother claims she completed the services necessary to remedy the circumstances that brought J.E. into care, meaning she did not substantially neglect or willfully refuse to remedy the circumstances causing the out-of-home placement. Mother's argument, however, is not supported by the record. In May 2013, DCS told Mother she needed to have a psychiatric evaluation. Mother knew she could obtain the evaluation at IHS, but did not do so. At most, Mother minimally participated in drug testing, missing nearly two-thirds of her required samples.

**¶11**          Mother argues that at trial DCS did not properly prove that she had mental health issues, and that DCS did not allege that Mother had substance abuse issues. This argument, however, misunderstands the significance of Mother's participation in services. DCS did not argue that Mother's parental rights should be terminated because of substance abuse or mental illness. Rather, DCS sought termination of her parental rights because Mother substantially neglected to remedy the circumstances that caused J.E. to be in care. Those circumstance include Mother's neglect due to her lack of interest in J.E., and DCS identified mental health issues as a possible cause of that neglect. By failing to participate in a psychiatric

evaluation and possible treatment, Mother failed to address those issues and, in doing so, neglected to remedy the circumstances that cause J.E. to be in care. The superior court properly could consider Mother's actions and inaction as indicating she substantially neglected to remedy the circumstances causing J.E.'s out-of-home placement.

¶12　　　　Even more significantly, the record shows Mother failed to demonstrate a willingness and ability to care for J.E. Although Mother was allowed visits at least once a week, during the nearly two years J.E. was in care she visited J.E. just eight times. Mother claimed transportation issues made it too difficult for her to travel for the visits, but the placement was willing to meet Mother halfway. Moreover, DCS offered to provide Mother a bus pass for transportation, but Mother was not willing to travel to collect the pass.

¶13　　　　Mother's lack of regular visits also meant parent aide services, which could have helped her learn to properly care for and parent J.E., were not put in place. Mother's testimony to a belief that J.E. missed her, further shows that, by failing to regularly visit J.E., she neglected his needs. On this record, the superior court reasonably could conclude that Mother has substantially neglected to remedy her unwillingness or inability to emotionally and physically care for J.E.

¶14　　　　There was reasonable evidence for the superior court to find that J.E. had been in out-of-home care for a period of at least nine months and that Mother had substantially neglected to remedy the cause of the placement. Accordingly, the court did not err in finding DCS had proven by clear and convincing evidence the nine-month time-in-care statutory ground for severance.[5]

### B.　　Best Interests.

¶15　　　　Mother challenges the superior court's finding that severance is in J.E.'s best interests. The best interests assessment focuses on "how the child would benefit from a severance or be harmed by the continuation of the relationship." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50 ¶ 19 (App. 2004) (citation omitted). The case worker testified that severance was in J.E.'s best interests because his current placement was with a family member who was meeting his needs and willing to adopt J.E. The superior

---

[5] Given this conclusion, this court need not address Mother's challenge to the superior court's abandonment finding. *See Jesus M. v. Ariz. Dept. of Econ. Sec.*, 203 Ariz. 278, 280 ¶3 (2002).

court relied on this and other evidence in finding severance to be in J.E.'s best interests.

¶16 Mother argues J.E. recognizes her as his mother and she believes he misses her, but admits that the bond between them is not as strong as it should be. Although Mother seeks more time to reestablish the bond between them, Mother did not regularly visit J.E. while he was in care for nearly two years. Moreover, Mother does not address her ability to meet J.E.'s needs. Accordingly, there was reasonable evidence to support the superior court's finding that severance is in J.E.'s best interests.

## CONCLUSION

¶17 The superior court's order terminating Mother's parental rights to J.E. is affirmed.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama