NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

VANESSA D., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, V.W., *Appellees*.[1]

No. 1 CA-JV 15-0154
FILED 11-10-2015

Appeal from the Superior Court in Maricopa County
No.  JD23237
The Honorable Linda H. Miles, Judge (Retired)

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellee Department of Child Safety*

---

[1] The caption has been amended to safeguard the child's identity pursuant to Administrative Order 2013-0001.

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Peter B. Swann joined.

---

**T H U M M A**, Judge:

¶1        Vanessa D. (Mother) appeals the superior court's order terminating her parental rights to V.W., arguing there was no clear and convincing evidence supporting the 15-months time-in-care ground for termination and that termination was not in V.W.'s best interests. Because the record supports the superior court's findings, the order is affirmed.

**FACTS[2] AND PROCEDURAL HISTORY**

¶2        V.W. was born in 2006. V.W.'s father, who is not a party to this appeal, is in prison for child abuse of another child. V.W. lived with Mother and her husband. The Department of Child Safety (DCS) took V.W. into care in January 2013 based on Mother's reported abuse of another child. DCS then filed a dependency petition, alleging Mother neglected V.W. due to Mother's mental illness, substance abuse and a history of domestic violence between Mother and her husband. The superior court found V.W. dependent in June 2013 and adopted a case plan of family reunification and a concurrent case plan of severance and adoption. The court ordered, and DCS provided, Mother with substance abuse treatment, domestic violence counseling, transportation, psychological evaluation and parenting classes.

¶3        In June 2014, following Mother's inconsistent participation in services and based on a psychologist's best interests and attachment assessment and a psychiatric evaluation of Mother, the superior court changed the case plan to severance and adoption over Mother's objection.

---

[2] This court views the evidence in a light most favorable to sustaining the superior court's findings. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207 ¶ 2 (App. 2008).

DCS then filed a motion to terminate Mother's parental rights, alleging 15-months time-in-care. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(8)(c) (2015).[3]

**¶4**            Evidence at the 4-day termination adjudication, held in March 2015, showed Mother initially refused drug testing, reported she had no history of drug use and, accordingly, received no substance abuse treatment. In August 2013, however, Mother tested positive for methamphetamines and evidence indicated she had started using methamphetamine approximately a decade earlier. When confronted with the positive test for methamphetamines, Mother did not dispute the test results, but claimed instead it was likely due to her exposure from distributing the drug or from her husband's use.

**¶5**            Mother admitted using methamphetamine, marijuana and alcohol after a miscarriage in December 2013. Over the following year, Mother participated in numerous drug treatment programs including TERROS, Elba's House, New Beginnings, Sojourner Center, Celebrate Recovery and Alcoholics Anonymous. Mother, however, left most of the treatment programs before completion. She also missed 61 of 165 required drug tests. At the time of trial, she was once again participating in Sojourner Center. Mother testified that she has been sober since January 2014, but had missed several required drug tests after that date.

**¶6**            Mother testified her husband was physically and emotionally abusive. As a result, Mother participated in various domestic violence treatment programs, beginning in March 2013, including New Horizons, Phoenix Interfaith, Chrysalis, Eve's Place and Arizona Center for Change. As with the drug treatment programs, Mother typically stopped participating in these programs before completion, but did receive a certificate of participation from Eve's Place. Despite the history of spousal abuse and subsequent counseling, in March 2014, Mother returned to her relationship with the abusive husband, at least temporarily, and was found with him at his apartment as recently as August 2014.

**¶7**            Mother received various mental health services, including psychological evaluations by Dr. James Thal, a licensed psychologist, in April and May 2013. Dr. Thal diagnosed Mother with unspecified personality disorders with histrionic and borderline traits. Dr. Thal testified that these traits cause Mother to seek volatile relationships and lead to chaos, uncertainty and instability. Mother sought treatment at Friendship

---

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

Community Mental Health from October to December 2014. Many of the other services Mother received included a mental health component.

**¶8**　　　　Dr. Thal evaluated Mother again in February 2015, one month before trial, and found her mental health issues were largely unchanged despite two years of services. Dr. Thal noted Mother had been expelled from Changing Life Center in January 2015 for failing to provide a urine sample. Dr. Thal testified that Mother remains impulsive, continues to show a disregard for the well-being of others, and had placed her children in danger and would likely endanger her children again. Dr. Thal testified he did not believe Mother would be able to parent in the near future.

**¶9**　　　　Another psychologist, Dr. Glenn Moe, evaluated Mother to assess the bond between Mother and V.W. Dr. Moe testified that there is an attachment between Mother and V.W., but it is an "anxious attachment." Dr. Moe described an anxious attachment as one that is dysfunctional and a detriment to the child because the child is unable to rely on the parent to meet her needs. He also testified that V.W. appears happy in her placement and has assimilated as part of the family.

**¶10**　　　　Both Drs. Thal and Moe testified severance would be in V.W.'s best interests. Mother's DCS case worker also testified that V.W.'s current placement meets all of V.W.'s needs and is willing to adopt her. Mother testified V.W. loves to visit her and they have a close, affectionate relationship. Mother's parent aide confirmed that Mother and V.W. showed affection toward one another during visits.

**¶11**　　　　After considering the evidence and argument, the superior court granted the motion to terminate. This court has jurisdiction over Mother's timely appeal pursuant to A.R.S. §§ 8-235, 12-120.21(A)(1) and 12-2101(A)(10) and Arizona Rules of Procedure for the Juvenile Court 103-04.

## DISCUSSION

**I.　　The Superior Court Did Not Err In Terminating Mother's Parental Rights.**

**¶12**　　　　As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground articulated in A.R.S. § 8–533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the

4

credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights so long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

### A.     15-Months Time-In-Care

**¶13**     DCS was required to prove that V.W. has been in an out-of-home placement for a cumulative period of 15 months or longer pursuant to court order, Mother has been unable to remedy the circumstances causing the out-of-home placement and there is a substantial likelihood Mother "will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c).

**¶14**     By the time of trial, it was undisputed that V.W. had been in care for more than two years. Mother argues the superior court erred in severing her parental rights because she "addressed" her mental health, substance abuse and domestic violence issues. To support her position, Mother lists her participation in numerous treatment programs. The statute, however, requires Mother to *remedy* the circumstances causing the out-of-home placement, not merely participate in programs. *See* A.R.S. § 8-533(B)(8)(c). The evidence supports that she has failed to do so.

**¶15**     Mother argues she has been sober since January 2014, but her only evidence to support that assertion is her trial testimony. Mother admitted at trial she missed required drug tests as recently as February 2015 and knew missed tests were considered to be positive. Mother also left the Changing Life Center in January 2015 after failing to provide a required urine sample for drug screening. There was sufficient evidence for the superior court to find Mother has been unable to remedy her drug abuse issues.

**¶16**     Mother does not argue that she has remedied her mental health issues. Instead, she lists the programs in which she participated to show she "addressed" the issue, and states she is willing to continue treatment in the future. Mother's mental illness was a circumstance that caused her to endanger and neglect V.W., resulting in her being taken into care by DCS. By statute, Mother was required to "remedy the circumstance" to prevent the loss of her parental rights. In this case, to remedy the circumstance requires that Mother manage her mental illness such that it no longer causes her to endanger or neglect her children. Merely participating in some programs, however, does not mean Mother has

remedied the circumstances that caused the children to be in care. Moreover, the evidence at trial shows Mother has failed to do so.

**¶17**        Dr. Thal testified Mother displays the same mental health issues she exhibited at her first examination in 2013. According to Dr. Thal, Mother has not learned to control her compulsive behavior or changed her disregard for the well-being of others, and is likely to continue to endanger her children by entering into dangerous relationships. Dr. Thal also testified Mother would not be capable of parenting in the near future.

**¶18**        Mother also argues she "addressed" her domestic violence issues by participating in various counseling services. Mother, however, did not complete most of those services. Moreover, although she admitted her husband was physically and emotionally abusive, she appeared unable to terminate their relationship and continued the relationship as recently as March 2014. She was also found with him at his apartment as late as August 2014, but testified she was only at the apartment on a personal errand. There was sufficient evidence for the superior court to find Mother has been unable to remedy her domestic violence issues.

**¶19**        The record fully supports the superior court's findings that V.W. has been in an out-of-home placement for more than 15 months, that Mother has been unable to remedy the circumstances causing V.W. to be in an out-of-home placement and that Mother will not be capable of exercising proper parental care and control in the near future. Accordingly, the superior court did not err in finding DCS has proven by clear and convincing evidence the statutory ground for severance.

### B.    Best Interests

**¶20**        Mother challenges the superior court's finding that severance is in V.W.'s best interests. The best interests assessment focuses on "how the child would benefit from a severance or be harmed by the continuation of the relationship." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50 ¶ 19 (App. 2004) (citation omitted). The superior court found severance was in V.W.'s best interests because it would provide stability by freeing her for adoption, and her current placement is willing to adopt her and meets all of her needs.

**¶21**        Although Mother asserts V.W. is emotionally attached to Mother, Dr. Moe testified it is a dysfunctional and detrimental attachment because V.W. is unable to rely on Mother to meet her needs. Conversely, Dr. Moe testified V.W. appears happy in her current placement and has assimilated as part of the family. He went on to testify that termination is

in V.W.'s best interests as it would allow for permanency and stability through adoption. Mother's case worker also testified V.W.'s placement meets all of her physical and emotional needs and is willing to adopt. Reasonable evidence presented at trial supports severance and adoption being in V.W.'s best interests.

## CONCLUSION

¶22　　　　The superior court's order terminating Mother's parental rights to V.W. is affirmed.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : ama