NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DESIREE A., DONOVAN J., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, D.A., *Appellees*.

No. 1 CA-JV 18-0481
FILED 8-20-2019

Appeal from the Superior Court in Maricopa County
No. JD32006
The Honorable Jeanne M. Garcia, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Phoenix
*Counsel for Appellant Mother*

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant Father*

Arizona Attorney General's Office, Mesa
By Thomas Jose
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Diane M. Johnsen joined.

---

**T H U M M A**, Judge:

¶1 Desiree A. (Mother) and Donovan J. (Father) appeal the termination of their parental rights to their son, D.A. Because they have shown no error, the termination order is affirmed.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2 D.A. was born in July 2015. In January 2016, the Department of Child Safety (DCS) took D.A. into custody and filed a dependency petition alleging domestic violence between, and substance abuse by, the parents and that Mother was not properly caring for D.A. The superior court found D.A. dependent as to both parents in June 2016 and adopted a family reunification case plan, later adding a concurrent case plan of severance and adoption.

¶3 DCS offered Mother individual counseling with a domestic violence component, visitation, parent aide services, a psychological evaluation, transportation and rule-out drug testing, which was negative for controlled substances. DCS offered Father similar services. Father minimally participated in services. Although Mother participated more regularly, she struggled to engage with D.A. during visits and to meet the goals set by parent aides.

¶4 After a change in case plan to severance and adoption, in January 2017 DCS filed a motion to terminate parental rights, alleging substance abuse as to Father and as to both parents: neglect, abuse and nine- and 15-months time-in-care. After a three-day adjudication ending in October 2017, the court denied the motion to terminate in December 2017.

---

[1] This court views the evidence in a light most favorable to sustaining the superior court's findings. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207 ¶ 2 (App. 2008).

¶5        In the December 2017 ruling, the court found DCS failed to prove abuse or neglect. For the remaining grounds alleged, the ruling focused on DCS' obligation to make a diligent effort to provide appropriate reunification services. *See* Ariz. Rev. Stat. (A.R.S.) § 8-533(D) (2019).[2] The court found DCS "dropped the ball for Mother's individual counseling," meaning those services ended by April 2017. The court also noted Dr. James Thal's recommendation that, given Mother's intellectual limitations, "verbal feedback and repetition be used to enhance Mother's understanding and retention of information," and his opinion that "this recommendation needed to be conveyed to Mother's service providers." Yet the DCS case manager, the court observed, "[did] not know if Dr. Thal's recommendations were used in assisting Mother achieve her goals in her Parent Aide or in her counseling sessions." Similarly, the court noted psychologist Dr. Glenda Eklund's testimony that Father's intellectual limitations should be accounted for when providing services but that "[t]here [was] no evidence that Dr. Eklund's recommendations to accommodate Father's [limitations] ha[d] been communicated to service providers or ha[d] been used by service providers."

¶6        Although expressing "serious concerns with" the parents' behavior, the court concluded that DCS "ha[d] not been diligent in providing appropriate reunification services." On this basis, the court denied the motion to terminate and changed the case plan back to family reunification.

¶7        At a June 2018 review hearing, over the parents' objections, the court again changed the case plan to severance and adoption. DCS' June 2018 motion to terminate alleged 15 months' time-in-care as the sole statutory ground.

¶8        At the second termination adjudication, held on two days ending in October 2018, the parents and a new DCS case specialist testified. The court began trial by noting it did not intend "to relitigate everything that was part of that first trial," took judicial notice of the first trial and incorporated the December 2017 findings in its findings. After the second trial, the court entered a November 2018 ruling granting the second motion to terminate.

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶9　　　　This November 2018 ruling reaffirmed the December 2017 finding that, as of that time, DCS had not provided appropriate reunification services and had not proved any statutory ground for severance. After detailing services DCS had provided after December 2017, however, the court found DCS had made "diligent efforts . . . to effectuate reunification of the family." The court further concluded the parents had "failed to fully and successfully participate in the reunification services provided."

¶10　　　　The November 2018 ruling acknowledged Mother had completed individual counseling and addressed substance abuse and domestic violence issues, adding the parents were "no longer together [and] do not see each other." Nevertheless, the court found Mother had not "successfully addressed the concern" that she was unable to properly care for D.A. and therefore had not "remedied all the circumstances that caused [D.A.'s] out of home placement." In concluding Mother would "not be capable of exercising proper and effective parental care and control for [D.A.] in the near future," the court noted Mother

> has not complied with her psychiatric care. She has not successfully completed two Parent Aide referrals. She was not consistent with her visits or skill sessions and therefore cannot legitimately assert that the "extra help" recommended by the psychological evaluation was lacking in this regard. Her failure to make the behavioral changes in her parenting skills was the problem: texting or otherwise using her phone, allowing Maternal Grandmother to care for the child, sleeping, and/or allowing [D.A.] to watch too much television during her visits were the problem.

¶11　　　　As for Father, the court found he participated in visits with D.A. only "sporadically." The court also found Father had been closed out of individual counseling and substance abuse treatment and testing due to lack of participation, noting Father testified he failed to attend these services "because he was in between jobs and trying to get himself settled." The court further found Father "lacks stable employment and housing. He has not demonstrated sobriety. He has not participated in counseling to address his anger and/or domestic violence." On that basis, the court concluded Father would "not be capable of exercising proper and effective parental care and control for [D.A.] in the near future."

4

¶12        The court found termination of the parents' rights was in D.A.'s best interests and granted the motion to terminate. This court has jurisdiction over the parents' timely appeal of the November 2018 ruling pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A) and 12-2101(A) and Arizona Rules of Procedure for the Juvenile Court 103-104.

**DISCUSSION**

**I.        Mother And Father Have Not Shown The Superior Court Erred By Finding DCS Made Diligent Efforts To Provide Appropriate Reunification Services After The December 2017 Ruling.**

¶13        As applicable here, to terminate parental rights a court must find by clear and convincing evidence that DCS has proven at least one statutory ground articulated in A.R.S. § 8-533(B) and by a preponderance of the evidence that termination is in the child's best interests. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm the superior court's termination order if it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citations omitted).

¶14        When DCS seeks termination based on 15-months time-in-care, it must show by clear and convincing evidence:  (1) the child has been in out-of-home placement for 15 months or longer; (2) DCS has made diligent efforts to provide appropriate reunification services; (3) "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement" and (4) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c). The statutory requirement of diligent efforts, which is "mandated on constitutional grounds," *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 49 ¶ 15 (App. 2004) (citation omitted), means DCS must provide parents "with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child;" it does not require that DCS provide "every conceivable service" or "undertake rehabilitative measures that are futile," *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192 ¶¶ 34, 37 (App. 1999) (citations omitted).

¶15       On appeal, both parents challenge the finding that DCS made diligent efforts to provide appropriate reunification services after the December 2017 ruling, and Father also challenges the court's finding that termination was in D.A.'s best interests. DCS argues the parents waived most or all of their services-related arguments by failing to raise them with the superior court. Because both parents raised several objections to DCS' provision of services before the superior court, and because "the decision to find waiver is discretionary," *Aleise H. v. Dep't of Child Safety*, 245 Ariz. 569, 573 ¶ 13 (App. 2018) (citation omitted), this court addresses Mother and Father's substantive arguments, in turn.

### A.       Mother.

¶16       Mother argues the court erred in finding DCS provided her appropriate reunification services, asserting DCS failed "to provide her with consistent, uninterrupted individual counseling" until "late 2017." Mother is correct that the court's December 2017 ruling found DCS had "dropped the ball for Mother's individual counseling" up to that point in time. But DCS' provision of services before December 2017 was not at issue during the 2018 trial, which focused on the services and the parents' participation and behavior modification after the 2017 trial. Mother does not appear to challenge the services DCS provided *after* the 2017 trial, which were the only services at issue at the 2018 trial and in this appeal.

¶17       The record supports the court's finding that DCS made diligent efforts to reunify the family after the December 2017 ruling. DCS provided Mother counseling and parent aide services, which the court could find, based on the record, were informed by Dr. Thal's recommendations. DCS also provided Mother with case management and transportation services. Although Mother claimed in June 2018 she had not been receiving bus passes, the court properly found parent aide records did not show a "significant pattern of lack of transportation as the reason for missed visits or skill sessions." Instead, they showed Mother cancelled only one skill session for lack of transportation. Mother completed the required counseling but closed out of parent aide services unsuccessfully due to multiple missed skill sessions unrelated to a lack of transportation. Moreover, despite Mother's participation in a portion of the required parent aide skill sessions, the record showed continued concern about her behavior during visits, and, as recounted above, the court found she had not made the behavioral changes necessary for reunification. On this record, Mother has not shown the court erred in finding DCS made diligent efforts to provide her appropriate reunification services after the December 2017 ruling.

B.      Father.

1.      Diligent Efforts.

¶18         Father argues DCS failed to make diligent efforts to provide him appropriate substance abuse testing and treatment and doctorate-level individual counseling after the December 2017 ruling. Reasonable evidence supports the court's finding to the contrary.

¶19         Regarding substance abuse treatment, a minute entry from February 2018 shows TERROS was "open for [Father]" at that time. After a new case specialist began in April 2018, Father requested another TERROS referral, indicating the prior referral had been closed out. The case specialist testified he referred Father to TERROS in spring or summer 2018, but later received a closure letter, meaning Father had again closed out of treatment unsuccessfully.

¶20         Although the record reflects some confusion about substance abuse testing, reports indicate DCS referred Father to TASC for testing in April 2018. Yet Father had closed out of testing unsuccessfully by May 2018 because he "was required to provide a urinalysis 7 times," he "did not provide any tests" and he did not call in to determine whether he needed to test. DCS also informed Father in June 2018 he should be testing with another service provider. Although Father was aware of the testing requirement, the referral later "lapse[d]" or was suspended because Father failed to participate.

¶21         Finally, Father "reported he self-referred for counseling" services as early as June 2017, and the case specialist testified a counseling referral was open in April 2018. At trial, Father maintained that as late as July 2018 he had "been doing it [him]self," but acknowledged he had not been going to the counseling because he had "been in between jobs, trying to get money to really get on th[e] bus and get around," and because the therapist "was busy." Father recalled last attending counseling in February 2018 and that he had been "closed out" because he missed his "last three appointments" with his assigned therapist. Nonetheless, Father did nothing regarding counseling until "a few weeks" before the October 2018 trial, when he asked DCS to refer him to another counselor.

¶22         As Father concedes on appeal, DCS offered him adequate "supervised visits, a parent aide, . . . and transportation after" the December 2017 ruling. The record also supports the court's finding that Father attended visits with D.A. "sporadically" and later "was unsuccessfully

7

closed out" of parent aide services "because of his inconsistent visits and skill sessions."

¶23 Father argues A.R.S. § 8-533(B)(8)(c) required DCS to allow him "the opportunity to participate in services for at least" 15 months before the court could terminate his parental rights on the 15-months time-in-care ground. By its text, the statute requires only that "[t]he child *has been in an out-of-home placement* for a cumulative total period of fifteen months or longer," A.R.S. § 8-533(B)(8)(c) (emphasis added), and does not dictate a minimum time period over which DCS must provide services. Instead, DCS must provide parents "with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Mary Ellen C.*, 193 Ariz. at 192 ¶ 37; *see also* A.R.S. § 8-533(D) (directing the court to "consider the availability of reunification services to the parent" when considering termination based on 15-months time-in-care). DCS provided Father repeated opportunities over a period of months to participate in services offered to improve his ability to care for D.A. Father has not shown the court erred by terminating his parental rights based on his failure to participate in those services.

## 2. Best Interests.

¶24 Father argues "reasonable evidence [did] not support [the court's] best interest finding," pointing to evidence he alleges weighs against that finding. Father also asserts the court "did not consider the impact on [D.A.] to permanently lose a connection to his biological family forever."

¶25 Once a statutory ground for termination has been proven, "the focus shifts to the interests of the child as distinct from those of the parent." *Kent K.*, 210 Ariz. at 285 ¶ 31. At that point, the court's primary concern "is 'protecting a child's interest in stability and security.'" *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 15 (2016) (citation omitted). "[T]ermination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018) (citation omitted). Although "the child's prospective adoption is a benefit that can support a best-interests finding," *Demetrius L.*, 239 Ariz. at 4 ¶ 16 (citation omitted), the court "must consider the totality of the circumstances existing at the time of the severance determination," *Alma S.*, 245 Ariz. at 150-51 ¶ 13 (citation omitted).

¶26        The court found D.A. was "thriving" in his current placement, which was providing him "with a loving and nurturing home environment." The court also found the "[p]lacement intends to proceed to adoption, which shall provide [D.A.] with the added benefit of stability and permanency." The court noted three-year-old D.A. had been moved six times before the current placement and that multiple members of D.A.'s family had "either been ruled out or not responded to [DCS'] request for information to assess them." When concluding DCS had proved the 15-months time-in-care ground, the court stated:

> [D.A.] has waited almost three years for his parents to fully assume their responsibilities, which include[] taking care of themselves. Both parents are still struggling with caring for themselves, let alone [D.A.]; he should not have to wait any longer.

Father has not shown the court abused its discretion in finding termination was in D.A.'s best interests.

## CONCLUSION

¶27        The termination order is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA