NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

NELTURIAH S., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, B.P., NAVAJO NATION, *Appellees.*

No. 1 CA-JV 20-0252
FILED 2-2-2021

Appeal from the Superior Court in Maricopa County
No. JD35914
The Honorable Sara J. Agne, Judge

**AFFIRMED**

COUNSEL

Law Office of Ed Johnson, PLLC, Peoria
By Edward D. Johnson
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge D. Steven Williams delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

**W I L L I A M S**, Judge:

**¶1**         Nelturiah S. ("Mother")[1] appeals the juvenile court's order terminating her parental rights to her child, B.P. Because Mother has shown no error, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**         Both Mother and B.P., born in 2014, are enrolled members of the Navajo tribe. In May 2018, police arrested Mother following an altercation with her boyfriend. Mother was intoxicated and no one was left to care for B.P. Police contacted the Arizona Department of Child Safety ("DCS") who took temporary custody of B.P. Mother later admitted to regularly drinking alcohol to excess and using methamphetamines.

**¶3**         DCS filed a dependency petition and B.P. was adjudicated dependent in September 2018. DCS offered Mother a variety of services as part of the case plan of family reunification, including supervised visitation, parent aide services, a psychological evaluation, and substance abuse assessment, treatment, and testing.

**¶4**         Mother tested positive for methamphetamines and amphetamines on multiple occasions and was inconsistent in reporting for drug testing. DCS referred Mother to Terros on three separate occasions and Mother twice failed to complete the program.

**¶5**         In January 2019, Mother self-admitted into TLC, the first of several in-patient treatment facilities, and maintained sobriety until the end of March. Between March and August 2019, Mother participated in treatment through Native American Connections but relapsed during the program, and again immediately upon completing it. Mother next transitioned to the Sun Valley Services Sober Living House. Despite

---

[1] Father's parental rights were also terminated, but he is not a party to this appeal.

missing two drug tests and retracting a hair-follicle sample before it could be tested, Mother completed the program.

**¶6**         In July 2019, the juvenile court changed the case plan from family reunification to severance and adoption. DCS moved to terminate Mother's parental rights. The Navajo Nation (the "Nation") intervened, participated in court hearings, and located a native adoptive placement for B.P.

**¶7**         In February 2020, Mother moved in with a new boyfriend. During a drug test, and a visit with B.P., Mother had visible bruising. Mother then moved out of her boyfriend's home, acknowledging the relationship was abusive, and into Desert Wellness Behavioral Home. Since then, Mother has self-reported six months of sobriety and consistently tested negative for drugs, except for two positive tests for codeine.

**¶8**         During the dependency, Mother's visits with B.P. were inconsistent. When visitations occurred, the interactions were deemed mostly appropriate. When Mother missed visits or B.P.'s daily routines were otherwise disrupted, B.P. reacted negatively by wetting the bed or exhibiting other behavioral problems.

**¶9**         In June 2020, the juvenile court held a contested termination hearing. After taking the matter under advisement, the court severed Mother's parental rights on the ground of fifteen months in an out-of-home placement pursuant to A.R.S. § 8-533(B)(8)(c), and found severance was in B.P.'s best interests. The Nation did not oppose the severance.

**¶10**         This timely appeal followed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶11**         We review a severance ruling for an abuse of discretion, accepting the juvenile court's factual findings unless clearly erroneous, *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004), and view the evidence in the light most favorable to sustaining the court's ruling, *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008). Because the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and

resolve disputed facts," we will affirm an order terminating parental rights if reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)).

**¶12** "To justify termination of the parent-child relationship, the [juvenile] court must find, by clear and convincing evidence, at least one of the statutory grounds set out in [A.R.S. §] 8-533," *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000), and find, by a preponderance of the evidence, that termination is in the best interests of the child, *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). Fifteen months in an out-of-home placement is one statutory ground authorizing termination. A.R.S. § 8-533(B)(8)(c).

**¶13** When the child is an enrolled member of an Indian tribe, as B.P. is here, the Indian Child Welfare Act of 1978 ("ICWA") also applies. 25 U.S.C. §§ 1901–1963. Termination of an Indian parent-child relationship additionally requires: (1) proof beyond a reasonable doubt[2] that continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child; and (2) that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that those efforts have proven unsuccessful. Ariz. R.P. Juv. Ct. 66(C).

*I.    Fifteen Months Out-of-Home Placement*

**¶14** The juvenile court may terminate a parent-child relationship under A.R.S. § 8-533(B)(8)(c) if:

> The child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order or voluntary placement pursuant to § 8-806, the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

**¶15** Mother concedes B.P. was in an out-of-home placement for more than fifteen months and does not dispute that DCS made diligent

---

[2] This includes presenting testimony from a qualified expert witness. Ariz. R.P. Juv. Ct. 66(C).

efforts to provide appropriate reunification services. Mother instead argues no reasonable evidence supports the court's finding that she was unable to remedy the circumstances which brought B.P. into DCS custody.

¶16 At the time DCS took custody of B.P., DCS alleged Mother was unable to provide proper and effective parental care due to domestic violence, incarceration, and substance abuse. In seeking to terminate Mother's parental rights, DCS alleged, in part, Mother had failed to "demonstrate sobriety." Mother either failed to drug test, or tested positive for drugs, on numerous occasions over a two-year period. When Mother was able to achieve periods of sobriety, it was while living in the structured environment of an in-patient treatment facility. However, there is little evidence she was able to maintain sobriety while receiving out-patient treatment. The court also noted a continued pattern of domestic violence, and inconsistent stable housing. And while the record does show Mother made some progress in her substance abuse treatment, including periods of sobriety, both of which the juvenile court acknowledged and commended, there is reasonable evidence to support the court's conclusion that Mother had not remedied her substance abuse and that there existed a substantial likelihood she would be unable to do so in the near future. On this record, Mother has failed to show the juvenile court abused its discretion.

*II.     Child's Best Interests*

¶17 In conducting the best interests inquiry, the juvenile court must find that the "child would [either] benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990).

¶18 Mother contends that termination was not in B.P.'s best interests because they share a bond and she has made efforts to improve her ability to parent. While the existence of a bond between a parent and child is relevant, it is not dispositive. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98–99, ¶ 12 (App. 2016).

¶19 Further, in making a best interest finding, the juvenile court must "evaluate the totality of the circumstances." *Id.* at 99, ¶ 12. Here, the court noted that B.P. is adoptable, doing well with the current placement, and the current placement was "willing to maintain [] cultural connections and connections with [B.P.'s] biological family," which had occurred "throughout the length of the [dependency]." *See Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1988) (indicating two factors the

court "may properly consider in favor of severance" are "the immediate availability of an adoptive placement" and "whether an existing placement is meeting the needs of the child"). The Nation additionally identified an ICWA compliant placement as a possible adoptive option for B.P. The court further properly considered potential detriments to B.P. if the parent-child relationship with Mother continued, including that "returning [B.P.] to Mother's care and maintaining her parent-child relationship would pose the detriment of subjecting [B.P.] to an unstable situation." Reasonable evidence supports the juvenile court's finding that termination was in B.P.'s best interests.

*III.    Continued Parental Custody Likely to Result in Serious Emotional or Physical Damage to the Child*

**¶20**        Where ICWA applies, parental-termination also requires proof beyond a reasonable doubt that continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child. Ariz. R.P. Juv. Ct. 66(C).

**¶21**        Although the record contains evidence that Mother had "pretty good interactions" with B.P., it also showed that B.P. struggles with night terrors and behavioral challenges when Mother is inconsistent with visitation. Reasonable evidence supports the court's finding that "Mother is not stable enough to meet [B.P.'s] basic needs" and that maintaining Mother's parent-child relationship "would pose the detriment of subjecting [B.P.] to an unstable situation." This evidence supports the notion that to return B.P. to Mother would likely result in serious physical or emotional damage to the child. Mother has shown no abuse of discretion.

*IV.    Efforts Made to Provide Remedial Services and Rehabilitative Programs Designed to Prevent the Breakup of the Indian Family Proved Unsuccessful*

**¶22**        Finally, ICWA requires active efforts in providing remedial services and rehabilitative programs to prevent the breakup of an Indian family before terminating a parent-child relationship. Ariz. R.P. Juv. Ct. 66(C). Because Mother does not raise the issue of whether such active efforts were made, including whether they failed, she has waived that challenge on appeal. *See Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 167 (App. 1996) ("Issues not clearly raised and argued in a party's appellate brief are waived.").

**CONCLUSION**

**¶23** Because Mother has shown no error, the order terminating Mother's parental rights is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA