NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JAVIER V., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.V., *Appellees.*

No. 1 CA-JV 20-0279
FILED 6-3-2021

Appeal from the Superior Court in Maricopa County
No. JD531022
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

### MEMORANDUM DECISION

Presiding Judge D. Steven Williams delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

**W I L L I A M S**, Judge:

**¶1**         Javier V. ("Father") appeals the juvenile court's order terminating his parental rights to his child. For reasons that follow, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**         Father and Tiphany H. ("Mother")[1] are the parents of J.V., who was born prematurely in 2017 and substance exposed to methamphetamines, amphetamines, and methadone. Mother also tested positive for methamphetamines, amphetamines, and methadone at J.V.'s birth. J.V. spent more than three months in the hospital, during which time Mother continued to test positive for drugs.

**¶3**         Upon J.V.'s discharge from the hospital, the Arizona Department of Child Safety ("DCS") filed an in-home dependency petition alleging J.V. was dependent due to both parents' neglect and Mother's substance abuse. Initially, J.V. remained at home with both parents and a safety monitor. DCS referred Father to family preservation services and concluded that Father was nurturing, willing to put J.V.'s needs above his own and others, and able to provide for his family's financial and basic needs. The safety monitor requirement was later lifted after DCS determined Father was an appropriate parent. Mother was also referred to a variety of services, but her participation was inconsistent and she continued testing positive for drugs.

**¶4**         Because of Mother's continued substance abuse, a safety plan was implemented requiring a responsible adult to watch J.V. while Father was at work. The plan prohibited J.V. from being left alone with Mother. Mother moved out of the family home. In January 2018, after receiving information that Mother took J.V. to the hospital alone, DCS moved the

_____

[1] The juvenile court vacated the order terminating Mother's parental rights. Mother is no longer a party to this appeal.

court to remove J.V. from Father's care because Father violated the safety plan. The court granted the motion and adjudicated J.V. dependent.

¶5        Father was referred to and participated in parent-aide services, individual counseling, and a psychological evaluation. After evaluating Father, the psychologist concluded Father had poor coping skills and boundaries when it came to Mother. Father also participated in a bonding assessment and was observed as having a close bond with J.V. During the bonding evaluation, Father indicated that he did not believe J.V. had special needs or that he was delayed in any way. J.V. was assessed, however, by a developmental specialist who identified the child as having "high" special needs, which would require constant supervision. Father was aware of some of J.V.'s medical appointments, but chose not to attend.

¶6        In August 2019, the DCS case manager conducted an unannounced visit during Father's overnight unsupervised time with J.V. Father denied that Mother, who was prohibited from having contact with J.V., was in the home. But DCS found Mother in the home. After this incident, Father was limited to supervised visitation, and the following month DCS moved to terminate Mother's and Father's parental rights. Thereafter, Father's participation in services was sporadic, and Father failed to visit the child from February 2020 to July 2020.

¶7        A two-day severance trial was held in August 2020. In September, the juvenile court issued a detailed written ruling terminating Father's parental rights based upon fifteen months in out-of-home placement and found termination was in J.V.'s best interest. *See* A.R.S. § 8-533(B)(8)(c). Father timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶8        We review a severance ruling for an abuse of discretion, accepting the court's factual findings unless clearly erroneous, *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004), and view the evidence in the light most favorable to sustaining the court's ruling, *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008). Because the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we will affirm an order terminating parental rights if reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18

(App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)).

**¶9**         "To justify termination of the parent-child relationship, the [juvenile] court must find, by clear and convincing evidence, at least one of the statutory grounds set out in [A.R.S. §] 8-533," *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000), and find, by a preponderance of the evidence, that termination is in the best interests of the child, *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). Fifteen months in an out-of-home placement is one statutory ground authorizing termination. A.R.S. § 8-533(B)(8)(c).

**¶10**         To prove fifteen months in an out-of-home placement, DCS must establish that (1) the child has remained in an out-of-home placement for a cumulative period of fifteen months or longer, and (2) "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." *Id.* Father does not contest the court's finding that J.V. remained in an out-of-home placement for fifteen months but disputes the findings that Father was unable to remedy the circumstances causing the out-of-home placement, and that a substantial likelihood existed that he was incapable of exercising effective care for J.V. in the near future.

**¶11**         In finding that Father was unable to remedy the circumstances, the juvenile court relied upon evidence showing Father denied that J.V. was delayed and was either unaware, or refused to acknowledge, J.V.'s special needs. There is evidence in the record to support the court's finding, including testimony from medical professionals. Additionally, the court found Father put Mother's needs above the child's needs. The court noted that Father violated the home safety plan and other DCS policies by allowing Mother to stay in contact with J.V. throughout the dependency. The court also noted Father was unable to articulate a viable plan for parenting the child, who had "high" special needs and needed constant supervision, while Father juggled two jobs. Further, the court explained that Father had been unable to provide the child with appropriate care for nearly three years and there was nothing to indicate that circumstances were likely to change. Record evidence supports each of these findings and Father has failed to show that the court erred.

**¶12**         DCS must also prove, by a preponderance of the evidence, that terminating a parent's rights would be in the child's best interests. *Kent*

*K.*, 210 Ariz. at 284, ¶ 22 (citing A.R.S. § 8-533(B)). Termination of the parent-child relationship is in the child's best interests if the child would either benefit from severance or suffer continued harm from the relationship. *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). In deciding whether severance is in the child's best interests, the juvenile court must consider the totality of the circumstances existing at the time of the determination. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150–51, ¶ 13 (2018).

**¶13**         Father argues that the juvenile court erred where it failed to consider the totality of the circumstances, specifically the bond between Father and J.V. But the court expressly considered the bond between Father and J.V., stating:

> The Court recognizes that Father has a bond with the child, however, Father has been unable to demonstrate in three years that he is able or will ever be able to meet the child's needs. This inability to acknowledge and meet the child's needs outweighs the significance of a bond between Father and the child.

The court appropriately examined and balanced the evidence, including, at times, conflicting evidence, ultimately finding the child's interest in stability and security to be the primary concern. *See id.* at 150, ¶ 12 (noting the court's primary concern must be the child's interest in stability and security). Further, while the existence of a bonded relationship between parent and child is a factor to consider, it is not dispositive in addressing the child's best interests. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98–99, ¶ 12 (App. 2016). The court also determined that J.V. was in a placement meeting his needs, and that he was adoptable. *See Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1988) (indicating two factors the court "may properly consider in favor of severance" are "the immediate availability of an adoptive placement" and "whether an existing placement is meeting the needs of the child"). On this record, Father has shown no error.

**CONCLUSION**

**¶14** For the foregoing reasons, we affirm the juvenile court's order terminating Father's parental rights to his child.



AMY M. WOOD • Clerk of the Court
FILED:  AA