NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STACY R.,
*Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, L.M., I.M., D.M.,
*Appellees.*

No. 1 CA-JV 21-0179
FILED 10-21-2021

Appeal from the Superior Court in Maricopa County
No. JD22115
The Honorable David O. Cunanan, Judge

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Mesa
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee, Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge D. Steven Williams delivered the decision of the Court, in which Judge David B. Gass and Judge James B. Morse Jr. joined.

---

**W I L L I A M S**, Judge:

**¶1**        Stacy R. ("Mother") appeals the superior court's order terminating her parental rights to her children. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        Mother and Stephan M. ("Father")[1] have three children, L.M., I.M., and D.M., all born between 2010 and 2013.

**¶3**        In 2012, the Arizona Department of Child Safety ("DCS") initiated a dependency action based upon reports of domestic violence, Mother's substance abuse, and untreated mental health, as well as her failure to supervise her infant and toddler. To her credit, Mother engaged in a variety of services, and the superior court dismissed the dependency the following year at DCS's request.

**¶4**        In December 2018, DCS again petitioned for a dependency after new reports surfaced that Mother used inappropriate discipline techniques, such as making the children hold rocks over their heads, locking a child (without clothes) outside, abusing prescription pain medication, having untreated mental-health issues, having a child shoplift alcohol for her, and having inappropriate sleeping arrangements for the children. DCS removed the children and placed them with their paternal grandmother ("Grandmother").

**¶5**        Once removed, Grandmother sought medical treatment for two of the children including treatment for strep throat, an ear infection, and updated immunizations for one child, and treatment for a yeast infection for another. The children described domestic violence between Mother and her boyfriend and corroborated that Mother made them hold things over their heads, left D.M. unclothed outside, and that Mother's

---

[1]Father's parental rights were also terminated, but he is not a party to this appeal.

boyfriend "hit them with a belt." L.M. also reported Mother had her hide a bottle under her shirt as they walked out of a store - but they were caught, put the bottle down, and ran.

**¶6**        Mother ultimately did not contest the dependency. In March 2019, the superior court set a case plan of family reunification and ordered DCS to provide Mother a variety of services, including a psychological evaluation, domestic violence counseling, substance abuse testing and treatment, a parent-aide, and transportation as needed and requested. Mother engaged in some services, with varied success.

**¶7**        In January 2021, DCS moved to terminate Mother's parental rights based upon the children's placement out-of-home for more than fifteen months and Mother's failure to remedy the circumstances that caused the children to be placed out-of-home. DCS alleged a substantial likelihood existed Mother would be incapable of exercising proper and effective parental care and control of the children in the near future and that termination of Mother's parental rights was in the children's best interests.

**¶8**        At the termination trial in April, the DCS case worker testified DCS provided Mother with all services it was ordered to provide. The case worker testified that, though Mother attended most of her visitations with the children, she was constantly on her phone, left early, and either did not bring enough food or would force the children to overeat, at times making them sick. The case worker also testified that on two occasions during visitation, once at a DCS office and once at the mall, Mother asked the children to steal items.

**¶9**        The case worker further testified Mother only completed seventy-five percent of her substance abuse tests, and there were problems with the collections in most of those tests. Mother also tested positive for alcohol at least four times. Regarding the parent-aide services, two parent-aides closed out Mother unsuccessfully. With the first parent-aide, Mother only completed nine out of the twenty-four scheduled skill sessions and did not show any enhancement of her diminished parental capacities. Later, however, with the second parent-aide, Mother enhanced two of five diminished capacities, but at the closure of services Mother "was still refusing to claim responsibility for anything." Last, the case worker testified that Mother failed to provide DCS with a current address and refused to take medication for her mental health diagnoses.

**¶10**        Mother countered that the issues with the first parent-aide were due to the aide having a "personal vendetta" against her. Mother

testified she had been on medication for the past month-and-a-half, but provided no documentation to support her testimony, and said the reason for her positive alcohol tests was that she took Nyquil. Regarding housing, Mother conceded she had moved four times over the last year but said she had secured housing for the past three months. Mother denied failing to update DCS each time she moved. Mother also denied drinking alcohol, being in a domestic-violence relationship with anyone except Father (years earlier), being in a relationship with anyone over the past three years, and asking her children to steal during the visits.

**¶11**     Using a DCS prepared order, the superior court found Mother was "not a credible witness." The court also found, in part, that Mother had "diminished parental capacities" at the close of both parent-aide services; had failed to make "the behavioral changes to reunify with her children"; had "struggled to consistently participate in urinalysis testing"; and had no "stable housing for the children to return to." The court terminated Mother's parental rights based upon the fifteen months in an out-of-home placement ground, under A.R.S. § 8-533(B)(8)(c), and in the children's best interests.

**¶12**     Mother timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶13**     Parental rights are fundamental, but not absolute. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97, ¶ 7 (App. 2016). A court may terminate a parent's right in the care, custody, and management of their children "if it finds clear and convincing evidence of one of the statutory grounds for severance, and also finds by a preponderance of the evidence that severance is in the best interests of the children." *Id.* at 98, ¶ 7.

**¶14**     We review a termination order for abuse of discretion, accepting the court's factual findings unless clearly erroneous, *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004), and view the evidence in the light most favorable to sustaining the court's ruling, *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we will affirm an order terminating parental rights if reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18

4

(App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)).

¶15        Fifteen months in an out-of-home placement is one statutory ground authorizing termination. A.R.S. § 8-533(B)(8)(c). The superior court may terminate a parent-child relationship under that ground if:

> The child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order or voluntary placement pursuant to [A.R.S.] § 8-806, the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

¶16        Mother only challenges the court's finding that a substantial likelihood exists she will not be capable of exercising proper and effective parental care and control of the children in the near future. Mother does not challenge the court's other statutory findings or that termination of the parent-child relationship was in the children's best interests. Accordingly, she has waived those arguments. *See* ARCAP 13(a) (requiring appellant's brief contain a statement of issues for review, supporting legal authority, references to the record, and reasons for each contention); *Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 578, ¶ 6 (App. 2017) ("[W]e adhere to the policy that it is generally not our role to *sua sponte* address issues not raised by the appellant."); *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 14 n.6 (App. 2011) (recognizing the failure to develop an argument on appeal usually results in abandonment and waiver of the issue).

¶17        Reasonable evidence shows that Mother's housing changed four times in the year leading up to the termination trial, including just three days before trial. Mother's stable housing was one of the concerns from the outset. Evidence also shows Mother failed to improve many of her diminished parenting capacities after two years of parent-aide services. Although conflicting evidence also existed, reasonable evidence established past domestic violence by Mother's boyfriend, that Mother continued in that relationship, and that the children had a fear of returning to Mother because of her boyfriend. And reasonable evidence also showed that Mother continued to have some substance-abuse issues. For these reasons, the court was within its discretion to find a substantial likelihood Mother would not be capable of providing proper and effective parental care and control in the near future. Mother has shown no error.

**CONCLUSION**

**¶18** For the foregoing reasons, we affirm the superior court's order terminating Mother's parental rights to the children.

