NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KANSAS H., DANIEL Z., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, I.Z., A.Z., K.Z., *Appellees*.

No. 1 CA-JV 21-0222
FILED 2-3-2022

Appeal from the Superior Court in Maricopa County
No. JD529107
The Honorable David King Udall, Judge (Retired)

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant Kansas H.*

H. Clark Jones, Attorney at Law, Mesa
By H. Clark Jones
*Counsel for Appellant Daniel Z.*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee Department of Child Safety*

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellee I.Z.*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the court, in which Presiding Judge Cynthia J. Bailey and Judge Peter B. Swann joined.

---

**W I L L I A M S**, Judge:

¶1        Kansas H. ("Mother") and Daniel Z. ("Father") appeal the superior court's order terminating their parental rights to I.Z., A.Z., and K.Z. (the "children"). For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        In 2015, the Department of Child Safety ("DCS") received a report that Mother and Father, who lived in California, had sent the children to stay with an aunt in Arizona without providing her the necessary paperwork to obtain medical treatment for them. The reporter also alleged Mother and Father were homeless, using drugs, and engaging in acts of domestic violence.

¶3        When interviewed by DCS, both parents admitted they had untreated mental-health disorders and regularly used marijuana. Mother disclosed a history of methamphetamine use as well as a history of suicidal ideations and attempts. The children witnessed at least two suicide attempts, when Mother "jump[ed] out of a moving car going 70 mph" and "jump[ed] off a bridge." Father disclosed he had previously been arrested for a domestic-violence incident involving Mother and that he was "wanted" in Arizona for violating probation on a firearm-related offense. Mother described Father as having "anger issues."

¶4        DCS filed a dependency petition alleging substance abuse, domestic violence, mental-health issues, and neglect. In early 2016, the superior court, exercising temporary emergency jurisdiction, adjudicated the children dependent, set a case plan of family reunification, and ordered DCS provide both parents with a psychological evaluation, substance abuse treatment, and counseling with a domestic violence component.

¶5        DCS attempted to place the children with Mother and/or Father in California under the Interstate Compact on the Placement of Children ("ICPC"). The ICPC application was denied due to unresolved

criminal matters involving both parents. The children have resided with a placement in Arizona since 2015.

¶6            In the summer of 2016, Mother and Father completed psychological evaluations with Dr. Mansfield-Blair. Dr. Mansfield-Blair diagnosed Mother with several mental disorders and recommended she participate in Dialectical Behavioral Therapy ("DBT"). During Father's evaluation with Dr. Mansfield-Blair, he blamed his extended family for DCS's involvement, claiming they "made up" the allegations against him. Dr. Mansfield-Blair diagnosed Father with several mental disorders and recommended that both parents participate in counseling, ongoing drug testing, and complete a second psychological evaluation after maintaining sobriety for at least one year.

¶7            DCS referred both parents to a therapist in California, but they never began services, claiming the office was too far away despite DCS's willingness to provide transportation. Mother and Father also claimed their schedule conflicted with the therapist's schedule. The therapist reported to DCS that this claim was not accurate. DCS then attempted to assign Mother and Father to another therapist, but the assignment was delayed due to the indecision of the parents as to whether services should begin in California or Arizona.

¶8            Throughout the dependency, DCS provided the parents with supervised visitation. In the spring of 2018, DCS referred the family for therapeutic visitation after one child expressed discomfort during visits with the parents. All three children ultimately refused to attend visits citing their parents' inability to change, and their happiness with their placement. The children's case manager encouraged the children to change their minds but was unsuccessful.

¶9            In the fall of 2018, Mother was in a car accident and stopped participating in services. Mother consistently reported to DCS that she was physically incapable of participating in services, but in 2019 Mother was charged with manufacturing a controlled substance and a 2020 police report indicates Mother attended a party where she danced and drank excessively.

¶10            To his credit, Father completed additional psychological evaluations as well as individual counseling. Nevertheless, he continued to deny any responsibility for DCS's involvement and instead blamed others.

¶11            In the summer of 2020, DCS referred Father and the children for a bonding assessment with Dr. Bryce Bennett. Dr. Bennett concluded

further services would be unlikely to "alter [the children's] willingness to engage in reunification" and that reunification would not be in the children's best interests. Dr. Bennett also noted Father's tone towards the children was so aggressive that he nearly ended the assessment early and opined that Father could be even more aggressive around the children when unobserved.

¶12        In 2021, after the children had been in care for nearly six years, the superior court changed the case plan from family reunification to severance and adoption. DCS then moved to terminate Mother and Father's parental rights.

¶13        Following a termination trial, the superior court terminated parental rights based upon fifteen-months in an out-of-home placement, *see* A.R.S. § 8-533(B)(8)(c), and found termination to be in the children's best interests.

¶14        Mother and Father timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶15        Parental rights are fundamental, but not absolute. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97, ¶ 7 (App. 2016). A court may terminate a parent's right in the care, custody, and management of their children "if it finds clear and convincing evidence of one of the statutory grounds for severance, and also finds by a preponderance of the evidence that severance is in the best interests of the children." *Id.* at 97-98, ¶ 7.

¶16        We review a termination order for abuse of discretion, accepting the court's factual findings unless clearly erroneous, *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004), and view the evidence in the light most favorable to sustaining the court's ruling, *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we will affirm an order terminating parental rights if reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)).

¶17        Fifteen months in an out-of-home placement is one statutory ground authorizing termination. A.R.S. § 8-533(B)(8)(c). The superior court may terminate a parent-child relationship under that ground if DCS has made a diligent effort to provide appropriate reunification services and:

> The child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order or voluntary placement pursuant to [A.R.S.] § 8-806, the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

*Id.*

¶18        Mother only challenges whether DCS made diligent reunification efforts. *See* A.R.S. § 8-533(B)(8) (as a prerequisite to termination under the out-of-home placement ground, DCS must make "a diligent effort to provide appropriate reunification services"). Mother does not challenge the superior court's statutory findings, or that termination of the parent-child relationship was in the children's best interests. *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 14 n.6 (App. 2011) (recognizing the failure to develop an argument on appeal usually results in abandonment and waiver of the issue).

¶19        Mother claims DCS's efforts were insufficient because, although DCS offered counseling, DCS did not refer her for DBT even though that service was recommended by Dr. Mansfield-Blair. The record shows, however, DCS referred Mother to a mental-health provider who could have enrolled her in DBT, but Mother chose not to engage, despite DCS's willingness to provide transportation. DCS was then unable to refer Mother to another therapist due to Mother's indecision as to whether services should begin in California or Arizona.

¶20        Mother also claims, based upon Dr. Mansfield-Blair's recommendations, DCS should have provided her an additional psychological assessment. However, in 2018, prior to Mother's accident, DCS referred Mother for an additional psychological evaluation, but Mother did not participate. Lastly, Mother contends that following her accident, DCS should have consulted with its unit psychologist to determine appropriate services. Mother, however, was unwilling to participate in services following her accident. Because the requirement that

DCS provide reunification efforts "does not oblige the State to undertake rehabilitative measures that are futile," *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999), the superior court did not err in finding DCS made a diligent effort to provide Mother appropriate reunification services.

¶21        Father also challenges whether DCS made diligent reunification efforts. Father claims DCS's efforts were insufficient because, although DCS offered numerous services, DCS failed to provide counseling services designed to help the children overcome their reluctance to reunify with him, failed to provide family counseling, and failed to ensure the children participated in therapeutic visits.

¶22        The record, however, demonstrates DCS offered services designed to help the children overcome their reluctance to reunify including referring the family for therapeutic visitation, which included a family counseling component, and individual therapy in which the children worked on overcoming the "current issues" in the case. DCS also referred Father and the children for a bonding assessment to determine whether additional services could assist in reunification. Dr. Bennett concluded that further services would be unlikely to "alter [the children's] willingness to engage in reunification." On this record, the superior court did not err in finding DCS made a diligent effort to provide Father appropriate reunification services.

¶23        Father also challenges the superior court's findings that Father has been unable to remedy the circumstances causing the children to be in an out-of-home placement and that there is a substantial likelihood that Father will not be capable of exercising proper and effective parental care and control in the near future.

¶24        The superior court found Father failed to remedy the circumstances causing the children to be in an out-of-home placement because Father failed to resolve his anger problem and refused to accept responsibility for the trauma and neglect the children suffered in his care. Though Father sees it differently, reasonable evidence supports the court's findings. *See Jordan C.*, 223 Ariz. at 93, ¶ 18. Despite completing an anger-management class, Father was continually aggressive towards and around the children. Further, during the approximately six years that the children were in care, Father refused to accept responsibility for the trauma and neglect the children suffered. The superior court did not err in finding Father had not remedied the circumstances causing the children to be in an out-of-home placement and that there was a substantial likelihood Father

would be unable to exercise proper and effective care and control in the near future.

## CONCLUSION

**¶25** For the foregoing reasons, we affirm the superior court's order terminating Mother and Father's parental rights to I.Z., A.Z., and K.Z.



AMY M. WOOD • Clerk of the Court
FILED:   AA